[No. S124636. Mar. 6, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT PETER HOFSHEIER, Defendant and Appellant.

1190

## Counsel

Paul Couenhoven, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Moona Nandi, Eric D. Share and John H. Deist, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**KENNARD, J.**—Defendant, Vincent Peter Hofsheier, a 22-year-old man, pled guilty to oral copulation with a 16-year-old girl in violation of Penal Code section 288a, subdivision (b)(1) (hereafter section 288a(b)(1).)[1] Under section 290, anyone convicted of certain sexual offenses, including a violation of section 288a(b)(1), must, while residing in California, register for life as a sex offender with the appropriate law enforcement agency. Defendant was therefore ordered to register as a sex offender.

Defendant appealed. He contended that he was denied the constitutionally guaranteed equal protection of the laws because a person convicted of unlawful sexual intercourse with a minor (§ 261.5) under the same circumstances would not be subject to mandatory registration. The Court of Appeal agreed and ordered the trial court's order granting probation modified to eliminate the registration requirement. Because the Court of Appeal's holding conflicted with *People v. Jones* (2002) 101 Cal.App.4th 220 [124 Cal.Rptr.2d 10] (*Jones*), we granted review to resolve the conflict.

We now hold, in accord with the decision of the Court of Appeal in this case, that to subject defendant to the mandatory registration requirement of

---

[1] Unless otherwise stated, all statutory citations are to the Penal Code.

section 290, subdivision (a)(1)(A) would deny defendant the equal protection of the laws. We direct the Court of Appeal to remand the case to the trial court, however, to exercise its discretion to determine whether defendant should be required to register as a sex offender under section 290, subdivision (a)(2)(E).

## I. Facts and Proceedings

On April 6, 2003, defendant engaged in voluntary oral copulation with a 16-year-old girl.[2] Under a plea bargain, defendant pled guilty to felony oral copulation in violation of section 288a(b)(1) in return for dismissal of two misdemeanor counts. Because of that guilty plea, the trial court denied defendant's request to reduce his felony conviction to a misdemeanor.

At the sentencing hearing, defense counsel argued that under the circumstances of this case, defendant should not be subject to mandatory lifetime registration as a sex offender. Counsel said: "It's kind of ironic, because if he had actually had sexual intercourse with [the minor] and was charged and convicted of statutory rape, he would not have to register under 290 of the Penal Code. It seems to me that his conduct is less serious in that sort of a situation, yet the statute seems to suggest that he is required to register for life. I think that is a violation of equal protection under the laws and a violation of the California Constitution . . . ."

The prosecutor responded that he would have no objection if defendant, after completing probation, were to ask the trial court to have his felony conviction reduced to a misdemeanor and to delete the requirement of lifetime registration as a sex offender. The trial court asked: "Doesn't it [the lifetime registration requirement] seem a little out of whack here?" The prosecutor agreed: "I think the law is out of whack. But that's the law." The trial court observed that in applying the registration requirement here, the law did appear to be "out of whack," but said it could not "find on the face of it that it's unconstitutional."

After suspending imposition of sentence, the trial court granted defendant probation on various conditions, including 120 days in county jail. It required defendant to register as a sex offender, but it said that if defendant successfully completed probation, he could seek to have his conviction reduced to a misdemeanor, which "would relieve him from the registration requirement."

---

[2] In this opinion, we use the term "voluntary" in a special and restricted sense to indicate both that the minor victim willingly participated in the act and to the absence of various statutory aggravating circumstances: the perpetrator's use of "force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person" (§ 288a, subd. (c)(2)); the perpetrator's "threatening to retaliate in the future against the victim or any other person" (§ 288a, subd. (c)(3)); and the commission of the act while the victim is unconscious (§ 288a, subd. (f)) or intoxicated (§ 288a, subd. (i)).

Defendant appealed, pointing out that reducing his felony conviction to a misdemeanor would not relieve him of his lifetime registration duty because section 290 *mandates* lifetime registration for *all* persons convicted of violating section 288a(b)(1), not only those sentenced as felons, as he was. (See § 290, subd. (a)(1)(A) [*all* persons convicted of offenses listed in par. (2) must register for life]; *id.*, subd. (a)(2)(A) [listing offenses, including § 288a]; *In re Alva* (2004) 33 Cal.4th 254, 265, fn. 4 [14 Cal.Rptr.3d 811, 92 P.3d 311] [only a gubernatorial pardon will relieve a defendant of a lifetime registration requirement].) Defendant contended that under the facts here imposition of mandatory lifetime registration as a sex offender denied him equal protection of the laws under the state and federal Constitutions because someone convicted of unlawful intercourse under the same circumstances would not face such mandatory registration. The Court of Appeal agreed, perceiving no rational basis for distinguishing between voluntary oral copulation with a minor and voluntary sexual intercourse with a minor. It affirmed defendant's conviction but modified the order granting probation to delete the lifetime registration requirement. We granted the Attorney General's petition for review.

## II. The Relevant Statutes

### A. *Sections 288a and 261.5*

Before 1921, oral copulation was prosecuted, along with sodomy and bestiality, as "the infamous crime against nature." (Stats. 1850, ch. 99, § 48, p. 234, codified in 1872 as § 286.) The Legislature's enactment of section 288a in 1921 made oral copulation a separate felony, punishable by an indefinite prison term of one to 15 years. (Stats. 1921, ch. 848, § 2, p. 1633.) The 1921 statute applied to all acts of oral copulation, but in 1975 the Legislature amended it to exclude acts between consenting adults. (Stats. 1975, ch. 877, § 2, p. 1967.)

In its present form, section 288a provides a graduated scale of punishment depending on the age of the parties and the presence or absence of force or other coercion. Section 288a(b)(1), the provision under which defendant was convicted of oral copulation with a 16-year-old girl, provides: "[A] person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year." Although section 288a(b)(1) applies to all acts of oral copulation with a person under the age of 18, other provisions provide for greater punishment for involuntary acts and acts involving younger victims. Thus, section 288a, subdivision (b)(2), provides that a person over 21 years of age who engages in oral copulation with someone younger than 16 years of age is guilty of a felony,

and subdivision (c)(1) provides for still greater punishment—three to eight years' imprisonment—for anyone who engages in oral copulation with someone under the age of 14 who is more than 10 years younger than the defendant. Other subdivisions specify imprisonment of three to eight years for forcible or involuntary oral copulation. (§ 288a, subds. (c)(2) & (3), (f).) And section 288 provides that any lewd or lascivious act (including oral copulation) with a child under the age of 14 is a felony punishable by three to eight years' imprisonment. Consequently, section 288a(b)(1) functions as the primary offense (as opposed to being a lesser included offense) in only two instances: (1) when, as here, the act of oral copulation is voluntary and the victim is 16 or 17 years old; and (2) when the act is voluntary, the victim is 14 or 15 years old, and the perpetrator is not over 21 years old. We are concerned here with the validity of the mandatory registration requirement for the first category—voluntary acts of oral copulation when the victim is 16 or 17 years of age.

 Defendant compares section 288a(b)(1), which prohibits oral copulation with a person under 18 years of age, with section 261.5, which prohibits "[u]nlawful sexual intercourse," defined as an act of intercourse with a minor "not the spouse of the perpetrator." (§ 261.5, subd. (a).) Like section 288a(b)(1), section 261.5 also has a graduated scale of punishments. Subdivision (b) provides: "Any person who engages in an act of unlawful sexual intercourse with a minor who is not more than three years older or three years younger than the perpetrator, is guilty of a misdemeanor." Subdivision (c) states that any person who engages in an act of unlawful sexual intercourse with a minor more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony. Subdivision (d) provides that a person over the age of 21 who engages in unlawful sexual intercourse with a minor under the age of 16 is guilty of a misdemeanor or a felony punishable by two to four years' imprisonment. Other statutes provide still greater punishment for forcible or involuntary intercourse (rape). (§§ 261, 264, 266c.) If defendant here, a 22-year-old man, had engaged in voluntary sexual intercourse with a 16-year-old girl, instead of oral copulation, he would have been guilty of violating section 261.5, subdivision (c), but he would not face mandatory sex offender registration.

 In sum, both section 288a and section 261.5 follow a pattern of imposing greater punishment on offenses involving younger victims, but the sentences imposed at each age level are not identical. Depending on the age of the victim or perpetrator, persons convicted of oral copulation with a minor are sometimes subject to more severe sentences than persons convicted of unlawful intercourse with a minor, often subject to the same sentence, and

occasionally subject to less severe sentences.[3] Apart from the mandatory lifetime registration requirement, voluntary sexual acts between a 22-year-old and a 16-year-old—whether oral copulation or sexual intercourse—are treated identically; both can be punished as either a felony or a misdemeanor.

### B. *Mandatory Lifetime Registration Under Section 290*

■ Section 290 requires anyone convicted of certain sex offenses to register for life as a sex offender. It provides: "Every person described in paragraph (2), for the rest of his or her life while residing in . . . California . . . , shall be required to register." (§ 290, subd. (a)(1)(A).) Paragraph (2) lists 37 Penal Code sections and subdivisions, including section 288a (oral copulation with a minor), but not section 261.5 (unlawful inter-course with a minor).

" ' "The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]" ' " (*In re Alva, supra,* 33 Cal.4th at p. 264, quoting *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101]; see *People v. Barker* (2004) 34 Cal.4th 345, 357 [18 Cal.Rptr.3d 260, 96 P.3d 507].) In recent years, section 290 registration has acquired a second purpose: to notify members of the public of the existence and location of sex offenders so they can take protective measures. (See Stats. 1996, ch. 908, § 1, subd. (b), p. 5105.)

■ Registration must be renewed annually within five working days of the sex offender's birthday. (§ 290, subd. (a)(1)(D); see *People v. Smith* (2004) 32 Cal.4th 792 [11 Cal.Rptr.3d 290, 86 P.3d 348]; *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1077 [26 Cal.Rptr.3d 365].) Failure to register, or to renew registration, can be either a felony or a misdemeanor, depending on the nature of the underlying conviction. (§ 290, subd. (g)(1), (2).) The duty to register as a sex offender under section 290, subdivision (a), cannot be avoided through a plea bargain (*People v. McClellan* (1993) 6 Cal.4th 367 [24 Cal.Rptr.2d 739, 862 P.2d 739]) or through the exercise of judicial discretion. ■ More-over, although a defendant convicted of oral copulation with a minor under section 288a(b)(1) may be eligible for a certificate of rehabilitation under section 4852.01 after completing his sentence, that certificate will not relieve the defendant of the lifetime registration requirement. (*In re Alva, supra,* 33 Cal.4th at p. 265, fn. 4.)

---

[3] If a defendant over the age of 21 engages in oral copulation with a minor 14 or 15 years old, the crime is a felony with a maximum sentence of three years. (§§ 18, 288a, subd. (b)(2).) If a defendant over the age of 21 engages in sexual intercourse with a minor 14 or 15 years old, the crime can be treated as either a felony or a misdemeanor; if it is treated as a felony the maximum sentence is four years. (§ 261.5, subd. (d).)

■ Although sex offender registration is not considered a form of punishment under the state or federal Constitution (*In re Alva, supra,* 33 Cal.4th at p. 268; *People v. Castellanos* (1999) 21 Cal.4th 785, 796 [88 Cal.Rptr.2d 346, 982 P.2d 211] (lead opn. of George, C. J.)), it imposes a "substantial" and "onerous" burden (*People v. Castellanos, supra,* 21 Cal.4th 785, 796 (lead opn. of George, C. J.); see *In re Birch* (1973) 10 Cal.3d 314, 321–322 [110 Cal.Rptr. 212, 515 P.2d 12]). If, as in this case, a person is convicted of a felony violation of section 288a, the California Department of Justice will furnish the registrant's name and ZIP code to inquiring members of the public. (§ 290.4, subd. (a).) When it becomes publicly known that a person is a registered sex offender, the person may be at risk of losing employment, and may have difficulty finding a place to live. (See *Doe v. Miller* (8th Cir. 2005) 405 F.3d 700; *E.B. v. Verniero* (3d Cir. 1997) 119 F.3d 1077, 1089–1090; *State v. Myers* (1996) 260 Kan. 669 [923 P.2d 1024, 1041]; Center for Sex Offender Management, Community Notification and Education (2001) pp. 14–15.)

### C. *Discretionary Registration Under Section 290*

■ Unlike section 288a (b)(1) (oral copulation with a minor), section 261.5, which pertains to unlawful intercourse with a minor, is not listed in section 290's mandatory lifetime registration provision, so a section 261.5 conviction is exempt from that registration requirement. Section 290, subdivision (a)(2)(E), however, provides that a person convicted of "any offense not included specifically in [section 290]" may be required to register "if the court finds . . . that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." If it requires registration, the trial court must "state on the record the reasons for its findings and the reasons for requiring registration." (§ 290, subd. (a)(2)(E); see *Jones, supra,* 101 Cal.App.4th at p. 227, fn. 6.) Consequently, to implement the requirements of section 290, subdivision (a)(2)(E), the trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender. By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case.

■ The principal difference between mandatory registration (§ 290, subd. (a)(1)(A)) and discretionary registration (§ 290, subd. (a)(2)(E)) is, of course, that the latter leaves the trial judge with the option of refusing to order registration. But there are other differences. First, discretionary registration does not depend on the specific crime of which a defendant was

convicted. Instead, the trial court may require a defendant to register under section 290, subdivision (a)(2)(E) even if the defendant was not convicted of a sexual offense. In *People v. Olea* (1997) 59 Cal.App.4th 1289 [69 Cal.Rptr.2d 722], for example, a defendant convicted of burglary was required to register for life as a sex offender because the trial court found that the defendant had entered the victim's residence intending to commit a sexual assault. In summary, if a defendant is convicted of a crime listed under the mandatory lifetime registration provision (§ 290, subd. (a)(1)(A)), the trial court must impose a registration requirement; under the discretionary provision (§ 290, subd. (a)(2)(E)), it may require lifetime registration if it finds the crime to have a sexual purpose.

Second, unlike a person charged with a sex offense requiring mandatory lifetime registration as a sex offender under section 290, a defendant charged with an offense that does not require such registration may be able to stipulate in a plea bargain that the trial court judge will not order registration. (*People v. Olea, supra,* 59 Cal.App.4th at p. 1296.) In contrast, as we explained earlier, a person convicted of voluntary oral copulation with a minor under section 288a(b)(1) cannot avoid lifetime registration either through a plea bargain or through the exercise of judicial discretion. The contrasting treatment of persons convicted of oral copulation with minors and those convicted of unlawful sexual intercourse with minors raises the equal protection issue here.

III. EQUAL PROTECTION ANALYSIS

The specific equal protection issue we face here involves the adult offender convicted under section 288a(b)(1) of a voluntary sexual act with a minor 16 years or older, a group that includes defendant. State law requires all such offenders to register for life as a sex offender. In contrast, an adult offender convicted of voluntary sexual intercourse with a minor 16 years or older is not subject to mandatory registration. The issue is whether this distinction violates the equal protection clause of the Fourteenth Amendment to the United States Constitution or of article I, section 7 of the California Constitution.

We are not here concerned with persons convicted of a crime involving a forcible sexual act, or one involving a victim under the age of 14, because all such persons must register as sex offenders irrespective of whether they engaged in oral copulation or sexual intercourse. (See §§ 264 [rape], 288 [lewd or lascivious acts with victim under the age of 14], 288a, subd. (c)(1) [oral copulation with a minor under 14 years of age], 288a, subd. (c)(2) [forcible oral copulation], 290, subd. (a)(2) [convictions requiring registration].)

### A. *The "Similarly Situated" Requirement*

█ "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; see *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) The Attorney General here contends that persons convicted of unlawful oral copulation under section 288a(b)(1) and those convicted of unlawful sexual intercourse under section 261.5 were not similarly situated, because the two groups were convicted of different crimes. (See *People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565 [18 Cal.Rptr.2d 395] and cases there cited.)

█ It may well be that in most cases, as the Attorney General contends, persons who commit different crimes are not similarly situated, but there is not and cannot be an absolute rule to this effect, because the decision of the Legislature to distinguish between similar criminal acts is itself a decision subject to equal protection scrutiny.[4] "The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. [Citation.] It also imposes a requirement of some rationality in the nature of the class singled out." (*Rinaldi v. Yeager* (1966) 384 U.S. 305, 308–309 [16 L.Ed.2d 577, 86 S.Ct. 1497]; see *People v. Nguyen* (1997) 54 Cal.App.4th 705, 714 [63 Cal.Rptr.2d 173].) Otherwise, the state could arbitrarily discriminate between similarly situated persons simply by classifying their conduct under different criminal statutes. (See *Lawrence v. Texas* (2003) 539 U.S. 558, 582 [156 L.Ed.2d 508, 123 S.Ct. 2472] (conc. opn. of O'Connor, J.).)

In *State v. Limon* (2005) 280 Kan. 275 [122 P.3d 22], for example, the defendant had been convicted of homosexual sodomy with a minor 14 or 15 years old. (Kan. Stat. Ann. § 21-3505(a)(2).) A different statute (Kan. Stat. Ann. § 21-3522) prohibited heterosexual sodomy with a minor 14 or 15 years old, but it prescribed a lesser penalty and did not require registration as a sex offender. The Kansas Supreme Court held that the statutory distinction between homosexual and heterosexual acts violated the equal protection clauses of the state and federal Constitutions.

█ Under the equal protection clause, we do not inquire "whether persons are similarly situated for all purposes, but 'whether they are similarly

---

[4] Indeed, the equal protection clause was created in part to nullify penal codes in former slave states that classified offenses against Blacks as different crimes, with lesser penalties, than offenses against Whites. (See Antieau, The Original Understanding of the Fourteenth Amendment (1981) pp. 21–23.)

situated for purposes of the law challenged.' " (*Cooley v. Superior Court, supra,* 29 Cal.4th at p. 253, quoting *People v. Gibson* (1988) 204 Cal.App.3d 1425, 1438 [252 Cal.Rptr. 56].) In *Newland v. Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254], for example, we considered a statutory scheme for the restoration of a community college teaching credential, a scheme that discriminated in favor of persons convicted of sexual felonies as opposed to those convicted of sexual misdemeanors. The felons were not only convicted of different crimes than the misdemeanants, but of crimes based on substantively different conduct. We recognize that in many settings the Legislature could rationally distinguish between felons and misdemeanants, often to treat felons more severely. We nevertheless found that with respect to restoration of community college teaching credentials the statutory scheme, by discriminating against misdemeanants, lacked a rational basis and consequently violated the state equal protection clause.

Turning to this case, section 288a(b)(1) and section 261.5 both concern sexual conduct with minors. The only difference between the two offenses is the nature of the sexual act. Thus, persons convicted of oral copulation with minors and persons convicted of sexual intercourse with minors "are sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment." (*People v. Nguyen, supra,* 54 Cal.App.4th at p. 715.)

### B. *The Rational Relationship Test*

In resolving equal protection issues, the United States Supreme Court has used three levels of analysis. Distinctions in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest. Classifications based on gender are subject to an intermediate level of review. But most legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose. (See *Romer v. Evans* (1996) 517 U.S. 620, 635 [134 L.Ed.2d 855, 116 S.Ct. 1620]; *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481–482 [97 Cal.Rptr.2d 334, 2 P.3d 581] (*Kasler*); *Warden v. State Bar* (1999) 21 Cal.4th 628, 641 [88 Cal.Rptr.2d 283, 982 P.2d 154] (*Warden*).) Defendant here asserts that subjecting him to mandatory lifetime registration for oral copulation with a 16-year-old girl, when a person convicted of sexual intercourse with a minor of the same age would not be subject to such registration, violates the rational relationship test.

In *Kasler,* this court described the rational relationship test in these words: " ' "[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge *if there is any*

*reasonably conceivable state of facts that could provide a rational basis for the classification.* [Citations.] Where there are 'plausible reasons' for [the classification], 'our inquiry is at an end.' " ' " (*Kasler, supra,* 23 Cal.4th at pp. 481–482; see *Warden, supra,* 21 Cal.4th at p. 644, both quoting *FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096].)

In *FCC v. Beach Communications, Inc., supra,* 508 U.S. at page 315, the high court observed: "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.' " But this is not an impossible task. The rationale must be "plausible" (*Warden, supra,* 21 Cal.4th at p. 645) and the factual basis for that rationale must be *reasonably* conceivable (*id.* at p. 644). ▉ And "even in the ordinary equal protection case calling for the most deferential of standards, [courts must ascertain] the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to the Equal Protection Clause." (*Romer v. Evans, supra,* 517 U.S. 620, 632.) As the high court said in *Nordlinger v. Hahn* (1992) 505 U.S. 1 [120 L.Ed.2d 1, 112 S.Ct. 2326], when it upheld California's Proposition 13 property tax assessment system, although it is irrelevant whether the perceived reason for the challenged distinction actually motivated the Legislature, equal protection "does require that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker" (*id.* at p. 15) and that "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." (*Id.* at p. 11.) Thus, as this court explained in *Warden, supra,* 21 Cal.4th 628, we must undertake " ' " '*a serious and genuine judicial inquiry* into the correspondence between the classification and the legislative goals' " ' " (*id.* at p. 647, quoting *Newland v. Board of Governors, supra,* 19 Cal.3d at p. 711) by inquiring whether " 'the statutory classifications are rationally related to the "realistically conceivable legislative purpose[s]" [citation]' . . . and . . . by declining to 'invent[] fictitious purposes that could not have been within the contemplation of the Legislature . . . .' " (*Warden, supra,* at p. 648, quoting *Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 163 [211 Cal.Rptr. 368, 695 P.2d 665], italics omitted in *Warden.*)

## C. *Asserted Rational Grounds for the Statutory Distinction*

We now inquire whether there is a rational basis for the statutory classification requiring lifetime registration as a sex offender by a person, such as defendant, convicted of voluntary oral copulation with a 16-year-old girl but not of a person convicted of voluntary sexual intercourse with a minor of that age. In asserting such a rational basis, the Attorney General relies on two Court of Appeal decisions that have rejected equal protection challenges to

section 290's mandatory lifetime registration for certain sex offenders. Neither case, however, describes a rational basis for the specific classification challenged here.

The more recent of the two cases, *Jones, supra,* 101 Cal.App.4th 220, involved the same constitutional issue as in this case. The Court of Appeal in *Jones* rejected the defendant's equal protection challenge because he failed to show that requiring lifetime registration of persons convicted of oral copulation with a minor (§ 288a(b)(1)) was not rationally related to the legitimate state interest of making potential recidivists available for police surveillance. (*Jones, supra,* at p. 229.) But the court's reasoning did not respond to the defendant's equal protection contention. There may be a rational basis to require *both* adults convicted of voluntary oral copulation with 16- or 17-year-old minors *and* adults convicted of voluntary intercourse with minors of that same age to register as sex offenders. But the defendant's equal protection challenge in *Jones,* like the equal protection challenge here, raised the issue whether the statutory *distinction* between persons convicted of voluntary oral copulation and those convicted of voluntary sexual intercourse rests on a rational basis. The Court of Appeal in *Jones* did not describe any rational basis for the distinction.

In the earlier Court of Appeal decision, *People v. Mills* (1978) 81 Cal.App.3d 171 [146 Cal.Rptr. 411], the defendant was convicted of lewd conduct with a victim under 14 years of age (§ 288). He argued that to require him to register for life as a sex offender violated state and federal equal protection standards because some other sex offenders, including those convicted of unlawful intercourse with minors 14 to 17 years old, were not required to register. The Court of Appeal held that the Legislature could reasonably require all persons convicted of sexual offenses involving victims under the age of 14 to register without requiring all sex offenders to register. We agree with the Court of Appeal in *Mills* that the defendant there failed to show a denial of equal protection as to adults convicted of lewd acts with minors less than 14 years of age because all adults convicted of crimes requiring sexual acts with minors of that age were required to register. (See §§ 288, 288a, subd. (c), 290, subd. (a)(2).) But *Mills* does not affect the decision in this case, for, in contrast to *Mills,* defendant here can point to similarly situated persons, those convicted of voluntary sexual intercourse with minors 16 to 17 years old, who are not required to register.

In contending that there is a plausible rationale or a reasonably conceivable factual scenario that would justify a distinction between those convicted of voluntary oral copulation and those convicted of voluntary sexual intercourse, the Attorney General does not look back to 1947 when the lifetime registration requirement was first enacted. Instead, he asserts there are *new* facts that

provide rational grounds for the Legislature today to require registration of adults convicted of voluntary oral copulation with minors 16 or 17 years old, while not requiring registration of adults convicted of voluntary sexual intercourse with minors of that age. He points to various media reports that oral copulation among adolescents has increased in recent years because oral copulation involves no risk of pregnancy and has a lesser risk of transmitting HIV.[5] These media accounts, however, discuss sexual conduct between adolescents, not conduct between adolescents and adults, as in this case. The frequency of voluntary oral copulation or voluntary intercourse between adolescents has little relevance to the issue here. Nevertheless, the Attorney General argues that it is "reasonably conceivable" that adults who engage in voluntary oral copulation with minors 16 or 17 years of age are more likely to repeat their offense than adults who engage in voluntary sexual intercourse with minors of the same age. He offers no evidence to support this speculative assertion, but insists that the absence of empirical evidence that adults convicted of voluntary oral copulation with 16- or 17-year-old minors are *not* more likely to reoffend than adults convicted of voluntary sexual intercourse with such minors requires the courts to assume that the legislative distinction rests on a reasonably conceivable set of facts.

But the absence of empirical evidence does not dictate the result. We must still determine whether the asserted rationale for the statutory distinction at issue rests on "plausible reasons," or on "reasonably conceivable" facts that could provide "rational" grounds for the classification (*Warden, supra,* 21 Cal.4th 628, 645), and not upon "fictitious purposes" that the Legislature could not have contemplated (*id.* at p. 649). (See *Newland v. Board of Governors, supra,* 19 Cal.3d at p. 712 [holding that a statutory classification discriminating against persons convicted of misdemeanors failed the rational relationship test because the Legislature could not rationally have concluded that misdemeanants, as opposed to felons, constituted a class of particularly incorrigible offenders who are beyond hope of rehabilitation].)

We must also inquire into the relationship between the classification and the statutory purpose. (See *Nordlinger v. Hahn, supra,* 505 U.S. 1, 12–14.) Requiring *all* persons convicted of voluntary oral copulation with minors 16 to 17 years of age to register for life as sex offenders, while leaving registration to the discretion of the trial court for those convicted of sexual

---

[5] The Attorney General cites: Denizet-Lewis, *Friends, Friends with Benefits and the Benefits of the Local Mall* (May 30, 2004) New York Times Magazine, page 30; Sanders, *Talking Teen Sex* (July 6, 2003) San Francisco Chronicle, page E4; Kozlowski, *More Teens Have Sex Than Parents Believe* (Nov. 16, 2003) The Detroit News, page 1A; Anthony, *Today's Young Girls Know Less About Sex Than Teens a Decade Ago* (Oct. 19, 2003) Toronto Star, page F07. These media accounts are based on a study by the National Center for Health Statistics. (Centers for Disease Control & Prevention, Sexual Behavior and Selected Health Measures: Men and Women 15–44 Years of Age, United States, 2002 (2005).)

intercourse with minors of the same ages, cannot be justified by the speculative possibility that members of the former group are more likely to reoffend than those in the latter group. To sustain the distinction, there must be some plausible reason, based on reasonably conceivable facts, why judicial discretion is a sufficient safeguard to protect against repeat offenders who engage in sexual intercourse, but not with offenders who engage in oral copulation.[6] (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 23 [112 Cal.Rptr. 786, 520 P.2d 10] [possibility that some osteopaths received inadequate training cannot sustain a law forbidding licensure of *all* osteopaths].) No reason has been suggested why judicial discretion is insufficient, and none comes to mind. No other state requires mandatory lifetime registration as a sex offender for anyone convicted of voluntary oral copulation with a minor 16 to 17 years of age, but not for someone convicted of voluntary sexual intercourse with minors of the same age.[7]

No doubt there are some persons convicted of oral copulation with 16- or 17-year-old minors for whom lifetime registration is appropriate because their conduct and criminal history suggest a high risk of recidivism, but the same can be said of some individuals convicted of unlawful intercourse with minors in that same age group. The existence of such potential recidivists under both statutes argues for discretionary registration depending on the facts of the case rather than mandatory registration for all persons convicted under section 288a (b)(1).

At oral argument, the Attorney General pointed to a 1997 report of the Assembly Committee on Public Safety, which in discussing a proposal to require registration for persons convicted of unlawful sexual intercourse, queried: "How many [teenage] mothers would want the father of their child

---

[6] The dissent characterizes our discussion of judicial discretion as a "public policy debate." (Dis. opn., *post*, at p. 1215.) Here, however, it is an issue of constitutional law. The purpose of section 290's registration requirement is to protect the public against repeat offenders. (See *ante*, pp. 1195–1196.) If there is no plausible reason, based on reasonably conceivable facts, why judicial discretion is sufficient to protect against repeat offenders who engage in sexual intercourse but not against repeat offenders who engage in oral copulation, then to deny the latter group the recourse of judicial discretion is to deny them the equal protection of the laws.

[7] In 38 states, the age of consent is 16 years, or occasionally younger, so voluntary sexual conduct with an adolescent 16 or 17 years of age is not a crime. In the remaining 11 states, five require sex offender registration for persons convicted of either voluntary oral copulation or voluntary sexual intercourse: Arizona (see Ariz. Rev. Stat. § 13-3821(A)(4)); Illinois (see 730 Ill. Comp. Stat. Ann. § 150/2); New Mexico (see N.M. Stat. Ann. § 30-9-11 (2005)); North Dakota (see N.D. Cent. Code §§ 12.1-32-15, 12.1-20-05 (2005)); and Texas (see Tex Code Crim. Proc. Ann. art. 62.001 and Tex. Pen. Code Ann. § 21.11). Louisiana and Tennessee require registration for some persons convicted of statutory rape of a 16- or 17-year-old victim (see La. Rev. Stat. Ann. § 14.80; Tenn. Code Ann. § 40-39-202(17)(A)(ii)), but they do not require registration of persons convicted of voluntary oral copulation with adolescents 16 to 17 years of age. The other four states (Colorado, Florida, Iowa, and Ohio) do not require registration of persons convicted of voluntary sexual acts with minors 16 or 17 years old.

to plead guilty to statutory rape and be subject to a [lifetime] registration requirement?" (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 1303 (1997–1998 Reg. Sess.) Apr. 22, 1997, p. 4.) The Attorney General asserts that the possibility of pregnancy distinguishes voluntary sexual intercourse from voluntary oral copulation, because requiring the father to register as a sex criminal might stigmatize both the mother and the child, and might harm the father's ability to support his child.

As the Attorney General acknowledged at oral argument, however, persons who engage in sexual intercourse often also engage in oral copulation. (In his brief on the merits, the Attorney General argued for mandatory registration of persons convicted of voluntary oral copulation *because* that act often leads to sexual intercourse, and thus to teenage pregnancies.) The effect of the father's mandatory registration on the mother and child does not depend on whether the registration is imposed for the act of sexual intercourse or the act of oral copulation. The Attorney General's argument offers a reason why neither voluntary sexual intercourse nor voluntary oral copulation should entail mandatory registration, but not a reason to distinguish between the two acts.

The dissent argues that defendant lacks standing to assert the constitutional rights of persons who have been convicted of both voluntary oral copulation and voluntary sexual intercourse. But defendant is not asserting the constitutional rights of persons with dual convictions; he is contesting the logic of the Attorney General's contention that the distinction between persons convicted of voluntary oral copulation and those convicted of voluntary sexual intercourse is justified by the possibility that intercourse will result in pregnancy. The point of defendant's argument is that if the possibility of pregnancy is a reason for avoiding mandatory registration of persons convicted of sexual intercourse, the same reason for avoiding mandatory registration applies to persons convicted of voluntary oral copulation, because those persons may have also engaged in intercourse (whether they were convicted of it or not) and a pregnancy may have resulted. In other words, the possibility of pregnancy, and the concern that requiring the father to register for life as a sex offender could stigmatize the mother or child, is a strong argument for giving a court discretion to reject registration for persons convicted of either voluntary sexual intercourse or voluntary oral copulation. It is not an argument that distinguishes between the two crimes.

 We recognize that the Legislature does not have to enact a comprehensive statute dealing with all categories of sex offenders when it undertakes to create a sex registration law such as section 290. In *Kasler, supra,* 23 Cal.4th 472, for example, this court sustained an assault weapon ban against the claim that it was unconstitutionally underinclusive because it did not include all weapons that might be considered comparable to the banned

weapons, observing that the Legislature may take " ' "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." ' " (*Id.* at p. 488.)[8] But the one-step-at-a-time argument does not fit this case. The legislative distinction between oral copulation and sexual intercourse dates from the Legislature's initial enactment of the sex registration laws in 1947. On three occasions in the last 10 years the Legislature considered and rejected proposals that would require registration for sexual intercourse with a minor in violation of section 261.5. (See Assem. Bill No. 3341 (1995–1996 Reg. Sess.) as amended June 27, 1996; Assem. Bill No. 1303 (1997–1998 Reg. Sess.); Assem. Bill No. 2320 (2000–2001 Reg. Sess.).) It is apparent that the Legislature is not engaged in a process of fine-tuning its sex offender registration statutes in a way that will eventually eliminate the distinction between voluntary oral copulation with minors 16 to 17 years of age and voluntary sexual intercourse with such minors. To the contrary, the mandatory lifetime requirements for certain sex offenders in section 290 and related statutes stand as a comprehensive, enduring statutory scheme—not a temporary or pilot program—and the classifications it includes cannot be sustained unless they rest on a rational basis.

The Attorney General's arguments, moreover, are at odds with the current purpose and structure of the mandatory registration provisions of section 290 and the Penal Code provisions on sex crimes generally. In 1947, when the Legislature enacted section 290, voluntary oral copulation between adults was criminal although voluntary adult intercourse was not. Today, however, statutes treat oral copulation and intercourse similarly: Current laws provide for more severe punishment and closer surveillance of persons who commit more serious sex crimes, such as forcible sexual acts or sexual acts involving children under age 14 (see §§ 261 [rape], 262 [spousal rape], 288 [lewd conduct with victim under age 14]) and provide less serious punishment for voluntary acts involving older adolescents (see §§ 261.5, 288a (b)(1)). Mandatory lifetime registration of all persons convicted of voluntary oral copulation in violation of section 288a (b)(1) stands out as an exception to the legislative scheme, a historical atavism dating back to a law repealed over 30 years ago that treated all oral copulation as criminal regardless of age or consent.

■ We perceive no reason why the Legislature would conclude that persons who are convicted of voluntary oral copulation with adolescents 16 to 17 years old, as opposed to those who are convicted of voluntary

---

[8] Under our state Constitution's equal protection clause, however, "when the legislative body proposes to address an area of concern in less than comprehensive fashion by 'striking the evil where it is felt most' [citation], its decision as to where to 'strike' must have a rational basis in light of the legislative objectives." (*Hays v. Wood* (1979) 25 Cal.3d 772, 791 [160 Cal.Rptr. 102, 603 P.2d 19].)

intercourse with adolescents in that same age group, constitute a class of "particularly incorrigible offenders" (*Newland v. Board of Governors, supra,* 19 Cal.3d at p. 712) who require lifetime surveillance as sex offenders. We therefore conclude that the statutory distinction in section 290 requiring mandatory lifetime registration of all persons who, like defendant here, were convicted of voluntary oral copulation with a minor of the age of 16 or 17, but not of someone convicted of voluntary sexual intercourse with a minor of the same age, violates the equal protection clauses of the federal and state Constitutions.[9] This conclusion does not preclude the Legislature from requiring lifetime registration both for persons convicted of voluntary oral copulation and for those convicted of voluntary sexual intercourse, thus treating both groups the same.

### IV. REMEDY FOR THE EQUAL PROTECTION VIOLATION

When a court concludes that a statutory classification violates the constitutional guarantee of equal protection of the laws, it has a choice of remedies. (See *Califano v. Westcott* (1979) 443 U.S. 76, 89–91 [61 L.Ed.2d 382, 99 S.Ct. 2655] [court may either withdraw benefits of welfare statute from favored class or extend those benefits to excluded class]; *Heckler v. Mathews* (1984) 465 U.S. 728, 740 [79 L.Ed.2d 646, 104 S.Ct. 1387] [same]; *People v. Liberta* (N.Y. 1984) 64 N.Y.2d 152 [474 N.E.2d 567, 578, 485 N.Y.S.2d 207] [court can either invalidate rape statute or expand it to include spousal rape].) Defendant argues that the appropriate remedy here is to eliminate section 290's mandatory lifetime registration for those convicted of voluntary oral copulation with 16- to 17-year-old minors. The Attorney General points out two other alternatives: One is to reform section 290 by adding a mandatory lifetime registration requirement for persons convicted of voluntary sexual intercourse with minors ages 16 or 17 years of age, thus treating such persons the same as those convicted of voluntary oral copulation with such minors; the other is to invalidate the mandatory lifetime registration provisions in section 290 as a whole.

In choosing the proper remedy for an equal protection violation, our primary concern is to ascertain, as best we can, which alternative the Legislature would prefer. (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 651 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (lead opn. of Lucas, C. J.); *id.* at p. 685 (conc. & dis. opn. of Baxter, J.); *Hayes v. Superior Court* (1971) 6 Cal.3d 216, 224 [98 Cal.Rptr. 449, 490 P.2d 1137]; *People v. Liberta, supra,* 474 N.E.2d at p. 578.) In some cases, a statute contains a severability clause that makes explicit the legislative preference (see *Heckler v. Mathews, supra,*

---

[9] *People v. Jones, supra,* 101 Cal.App.4th 220, is disapproved to the extent that it is inconsistent with this decision.

465 U.S. at pp. 739–740; *In re Blaney* (1947) 30 Cal.2d 643, 654–655 [184 P.2d 892]), but we find no such clause in section 290.

We reject out of hand the option of declaring section 290's mandatory lifetime registration provisions invalid as a whole. These provisions serve an important and vital public purpose by compelling registration of many serious and violent sex offenders who require continued public surveillance. Total invalidation of section 290's mandatory registration provisions would undoubtedly be unacceptable to the Legislature. (See *People v. Liberta, supra,* 474 N.E.2d at p. 580 [New York Court of Appeals refused to invalidate New York's laws prohibiting forcible rape because they did not include rape by a spouse]; *State v. Limon, supra,* 122 P.3d at p. 40.)

With respect to the other option mentioned by the Attorney General, that of reforming section 290 to extend the mandatory lifetime registration requirement to persons convicted of voluntary sexual intercourse with minors, we note that in the last 10 years the Legislature on three separate occasions has considered but rejected proposals to do just that. (See *ante,* at p. 1205.) Thus, the Attorney General's proposed option would conflict with the Legislature's intent. On the other hand, although the Legislature has amended section 290 frequently since its original enactment in 1947 (and once repealed and immediately reenacted the entire section (Stats. 1985, ch. 1474, §§ 1, 2, pp. 5403–5410)), there is no legislative history suggesting that since the Legislature's 1974 repeal of laws prohibiting all voluntary oral copulation, regardless of age or consent, the Legislature has ever turned its attention specifically to the application of the mandatory lifetime registration provisions to those convicted of oral copulation in violation of section 288a(b)(1).

We conclude, for the reasons discussed above, that the Legislature would probably find elimination of section 290's mandatory lifetime registration requirement for persons convicted of oral copulation under section 288a(b)(1) for engaging in voluntary oral copulation with 16- or 17-year-old minors preferable to either eliminating the entire mandatory lifetime registration provisions of section 290 or imposing a mandatory lifetime registration requirement for persons convicted of unlawful intercourse under section 261.5 for engaging in sexual intercourse with minors 16 to 17 years old.

## V. DISCRETIONARY REGISTRATION

As mentioned on pages 1196 to 1197, *ante,* subdivision (a)(2)(E) of section 290 gives a trial court discretion to order lifetime registration as to any offender even if the defendant was not convicted of a sexual offense if the court finds that "the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." Because of our holding

that section 290's lifetime registration requirement cannot be constitutionally applied to defendant, the matter should be remanded to the trial court so it can determine whether defendant falls within the discretionary registration category described in subdivision (a)(2)(E) of section 290 as discussed at pages 1196–1197, *ante*; if he does, the trial court may, in its discretion, order defendant to register as a sex offender under that provision.

## VI. DISPOSITION

The judgment of the Court of Appeal is reversed. That court is directed to remand the case to the trial court with directions to remove the requirement that defendant register as a sex offender pursuant to subdivision (a)(1)(A) of section 290, to determine whether defendant is subject to discretionary registration pursuant to subdivision (a)(2)(E) of section 290, and, if so, to exercise its discretion whether to require defendant to register under that provision. In all other respects the judgment of the Court of Appeal is affirmed.

George, C. J., Werdegar, J., Chin, J., Moreno, J., and Fybel, J.,[*] concurred.

**BAXTER, J., Dissenting.**—I respectfully dissent.

The majority invalidates the Legislature's decision to require *mandatory* lifetime sex offender registration for persons who engage in unlawful voluntary *oral copulation* with a minor who is 16 or 17 years of age, because those who engage in unlawful voluntary *intercourse* with a same-age minor are subject to *discretionary* sex offender registration. But as any teenager or adult knows, intercourse is distinct from oral copulation, involving a wholly different sexual act that, unlike oral copulation, may result in pregnancy and the birth of a child. Given this significant difference in the potential real-life consequences of the two acts, the Legislature reasonably could decide that different registration schemes for the two groups of offenders are appropriate as a matter of public policy. Thus, while both offenses involve voluntary sexual conduct with minors, the Legislature chose to leave the imposition of sex offender registration to judicial discretion in intercourse cases, evidently in recognition of the negative effects of lifetime registration when voluntary intercourse between individuals in an ongoing relationship results in the birth of a child. By disregarding this rational basis for differentiated treatment of the two offender groups, and nullifying a significant portion of the mandatory registration scheme as it pertains to oral copulation offenders, the majority intrudes into the Legislature's domain and indulges its own notions about what constitutes good public policy.

---

[*]Associate Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# I.

As defendant explains in his briefing, he met his 16-year-old female victim in an Internet chat room. After chatting with the victim a number of times on the Internet and speaking to her by phone, defendant met her and her young friend at a beach. Defendant brought rum and orange juice, which the girls drank. The victim's friend got drunk and sick. Before taking the girls home, defendant told the victim, "you owe me something." The victim orally copulated him.

Defendant was convicted of violating Penal Code[1] section 288a, subdivision (b)(1) (section 288a(b)(1)), a statute that, as relevant here, criminalizes voluntary oral copulation with a minor who is 16 or 17 years of age. Because of this conviction, he is subject to mandatory lifetime sex offender registration under section 290. (§ 290, subd. (a)(1)(A).)

This court has acknowledged repeatedly that section 290 serves "an important and proper remedial purpose" (*People v. Castellanos* (1999) 21 Cal.4th 785, 796 [88 Cal.Rptr.2d 346, 982 P.2d 211] (lead opn. of George, C. J.)) and furthers "vital public interests" (*People v. Ansell* (2001) 25 Cal.4th 868, 888–889 [108 Cal.Rptr.2d 145, 24 P.3d 1174]) by compelling registration of "sex offenders who require continued public surveillance." (Maj. opn., *ante*, at p. 1208; see also *In re Alva* (2004) 33 Cal.4th 254, 279, fn. 12 [14 Cal.Rptr.3d 811, 92 P.3d 311].) "Given the general danger of recidivism presented by those convicted of criminal sexual misconduct, and the relatively minor burden registration represents, the Legislature may adopt a rule of general application for this class of offenders, and may guard against the demonstrated long-term risk of reoffense by imposing a permanent obligation on persons convicted of such crimes." (*Alva*, at pp. 279–280.) It is settled, moreover, that the means chosen to achieve this regulatory goal are reasonable. (*Ibid.*)

In challenging the trial court's imposition of lifetime registration, defendant does not challenge the legitimacy of section 290's remedial purpose. Neither does he argue that requiring lifetime registration of section 288a(b)(1) offenders is not rationally related to that purpose. Rather, he makes the limited contention he was denied equal protection of the laws because persons who violate section 261.5, a statute that, as relevant here, criminalizes voluntary sexual intercourse with a minor who is 16 or 17 years of age, are not also subject to mandatory lifetime registration under section 290.[2]

---

[1] Unless otherwise stated, all further statutory citations are to the Penal Code.

[2] In making this contention, defendant argues that, had he engaged in sexual intercourse with the minor victim instead of oral copulation, he would not have been required to register. This argument rests on speculation and conjecture that the victim would have voluntarily engaged in

Our state constitutional guarantee of equal protection (Cal. Const., art. I, § 7) is substantially equivalent to that contained in the United States Constitution (U.S. Const., 14th Amend.), and our analysis of state and federal equal protection claims is substantially the same. (See *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571–572 [117 Cal.Rptr.2d 168, 41 P.3d 3]; *Warden v. State Bar* (1999) 21 Cal.4th 628, 648, fn. 12 [88 Cal.Rptr.2d 283, 982 P.2d 154].) The precise question here is whether these constitutional guarantees of equal protection are violated by the Legislature's decision to require *mandatory* lifetime sex offender registration for persons who engage in voluntary oral copulation with a minor 16 or 17 years of age in violation of section 288a(b)(1), while at the same time providing for *discretionary* sex offender registration for those who engage in voluntary intercourse with a same-aged minor in violation of section 261.5, subdivision (c). (Compare § 290, subd. (a)(1)(A) [mandatory] with § 290, subd. (a)(2)(E) [discretionary].) If the two groups of criminal offenders are not "similarly situated" for this purpose (*Cooley v. Superior Court* (2000) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654]; *In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]), or if there is any reasonably conceivable state of facts that could provide a rational basis for the difference in treatment (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481–482 [97 Cal.Rptr.2d 334, 2 P.3d 581]), then the Legislature's decision comports with constitutional equal protection principles and must be upheld as valid.

## A. The "Similarly Situated" Requirement

" ' "Persons convicted of *different* crimes are not similarly situated for equal protection purposes." [Citations.] "[I]t is one thing to hold, as did [*People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375]] that persons convicted of the *same crime* cannot be treated differently. It is quite another to hold that persons convicted of *different crimes* must be treated equally." [Citation.]' [Citation.]" (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565 [18 Cal.Rptr.2d 395].)

The majority generally acknowledges this precept, but finds it inapplicable because section 288a(b)(1) and section 261.5 "both concern sexual conduct with minors" and the "only difference between the two offenses is the nature of the sexual act." (Maj. opn, *ante*, at p. 1200.) Notably, however, the majority is unable to cite to a single state or federal decision finding an equal protection violation concerning the direct consequences of conviction where, as here, the challenge involves classes of persons convicted of committing substantively distinct sexual offenses.

intercourse with him. Indeed, had defendant actually attempted to press the victim for intercourse, she might very well have refused. Of course, any intercourse occurring after such a refusal would have been forcible and subject to mandatory lifetime sex offender registration. (§ 290, subd. (a)(1)(A).)

Inexplicably, the majority concludes that persons engaging in oral copulation with minors are similarly situated to persons engaging in intercourse with minors, based on clearly inapposite judicial authorities addressing statutes that, for some persons but not for others, criminalized the *same sexual conduct* or made the *same conduct* subject to harsher punishment. In *Lawrence v. Texas* (2003) 539 U.S. 558 [156 L.Ed.2d 508, 123 S.Ct. 2472], for example, the United States Supreme Court held that a Texas statute making it a crime for two persons of the same sex—but not persons of the opposite sex—to consensually engage in certain intimate sexual conduct violates the due process clause of the federal Constitution. Although, as the majority indicates, Justice O'Connor would have resolved *Lawrence* under equal protection principles, *Lawrence* offered no occasion to address whether persons who are convicted for engaging in different criminal sexual conduct (e.g., oral copulation with a minor versus intercourse with a minor) are similarly situated for purposes of punishment or other consequences. In *State v. Limon* (2005) 280 Kan. 275 [122 P.3d 22], the Kansas Supreme Court found *Lawrence* controlling in finding a criminal statute violated constitutional equal protection guarantees because the punishment it authorized for unlawful voluntary sexual conduct between members of the opposite sex was far less harsh than the punishment it allowed for *the same conduct* between members of the same sex. In relying on these authorities to conclude that persons are similarly situated when they voluntarily engage in separate and distinct sex-based offenses, only one of which poses the risk of pregnancy and childbearing, the majority takes a rash jurisprudential leap.[3]

---

[3] The majority's other authorities are similarly inapposite. (See maj. opn., *ante*, at p. 1199.) Unlike the situation in *Newland v. Board of Governors* (1977) 19 Cal.3d 705 [139 Cal.Rptr. 620, 566 P.2d 254], this case does not concern a civil law or rule that inexplicably and categorically favors persons convicted of felony sex crimes over persons convicted of misdemeanor sex crimes. (See also *Rinaldi v. Yeager* (1966) 384 U.S. 305 [16 L.Ed.2d 577, 86 S.Ct. 1497] [state law that required an unsuccessful appellant to repay the cost of a transcript used in preparation of the unsuccessful appeal which applied only to incarcerated appellants but not to those given a suspended sentence, placed on probation, or sentenced only to pay a fine, violated equal protection]; *Cooley v. Superior Court, supra*, 29 Cal.4th 228 [although the Lanterman-Petris-Short Act and the Sexually Violent Predators Act are both civil commitment statutes, habeas corpus proceedings under the former and probable cause hearings under the latter are not functional equivalents, so persons utilizing these procedural protections are not similarly situated]; *In re Eric J., supra*, 25 Cal.3d 522 [adults convicted in the criminal courts and youths adjudged wards of the juvenile courts not similarly situated with respect to their interest in liberty]; *People v. Nguyen* (1997) 54 Cal.App.4th 705, 713,717 [63 Cal.Rptr.2d 173] [rejecting an equal protection challenge to statutes providing that a petty thief who had two prior serious felony convictions, including or in addition to a prior theft-related conviction resulting in confinement, is subject to punishment under the three strikes law (potentially resulting in a term of 25 years to life), while at the same time providing that a petty thief who had two prior serious felony convictions but no prior theft-related conviction is subject only to misdemeanor punishment].)

### B. *The "Rational Relationship" Test*

Even assuming that persons who engage in voluntary oral copulation in violation of section 288a(b)(1) are similarly situated to those who engage in voluntary intercourse in violation of section 261.5, the question remains whether the Legislature lacked a plausible rationale, based on any reasonably conceivable state of facts, for distinguishing between the two groups of offenders for registration purposes.

As the Attorney General suggests, it is reasonably conceivable that adults who violate section 261.5 are less likely to repeat their offense than adults who violate section 288a(b)(1). (See maj. opn., *ante*, at pp. 1203–1204.) Why is that reasonably conceivable? Because many minors, like many adults, can and do distinguish between "going all the way" and other sexual acts, especially when the conduct is voluntary. Viewing section 261.5 as a sex crime involving fewer potential minor victims (and adult offenders) than section 288a(b)(1), the Legislature could plausibly conceive that mandatory lifetime registration is not as critical in section 261.5 cases because the adults who commit this crime have less opportunity to do so.

Apart from this plausible rationale, the Legislature, in fact, had specific public policy reasons for subjecting section 261.5 offenders to discretionary, as opposed to mandatory, registration. In considering a 1997 bill that among other things would have amended section 290 to add section 261.5 to the list of offenses subject to mandatory lifetime registration,[4] the Legislature expressly questioned whether extending the requirement to section 261.5 offenders might have negative repercussions when voluntary intercourse between individuals in a relationship results in the birth of a child.[5] (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1303 (1997–1998 Reg. Sess.) as amended Apr. 16, 1997, p. 4 ["How many teen[] mothers would want the father of their child to plead guilty of statutory rape and be subject

---

[4] The legislative history discloses the author of the 1997 bill had sought to add section 261.5 to the list of offenses subject to mandatory lifetime registration in light of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act of 1994 (the Jacob Wetterling Act) (42 U.S.C. § 14071), which conditions a state's receipt of federal funding for drug control on compliance with the act. In considering the bill, the Legislature debated whether mandatory lifetime registration for section 261.5 offenders was necessary to maintain anti-drug funding under that act. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1303 (1997–1998 Reg. Sess.) as amended Apr. 16, 1997, pp. 2–3.)

Neither the majority nor the parties address whether judicial elimination of mandatory registration for section 288a (b)(1) offenders causes California to be out of compliance with the Jacob Wetterling Act.

[5] This legislative history undermines defendant's bald statement that the only logical explanation for the Legislature's disparate treatment of section 288a (b)(1) offenders and section 261.5 offenders is "antipathy against sexual acts historically associated with homosexuals, as opposed to the heterosexual norm of penile-vaginal intercourse."

to a life time registration requirement?"; "Will more cases go to trial instead of settle[] if a registration requirement is mandated?"].) Indeed, it is not difficult to imagine that lifetime sex offender registration of a parent may have the unfortunate effect of stigmatizing a child, especially when the child continues to live with the registering parent. At the same, moreover, the Legislature could plausibly conceive that recidivism was much less of a problem in these situations.

In light of such considerations, a legislative decision to preserve the distinction between intercourse offenders and oral copulation offenders—by continuing to provide for discretionary registration for the former—seems both perfectly sound and particularly appropriate for cases where the minor victim and the section 261.5 offender attempt to establish or maintain a familial relationship around a child resulting from the offense.[6] In providing for a dual approach to registration, the Legislature certainly was well aware that the availability of judicial discretion in intercourse cases did not mean all section 261.5 offenders, including predatory offenders lacking any preexisting relationship with their victims, would avoid registration. It simply meant lifetime registration would not be mandatory for all section 261.5 offenders, including those whose poor judgment resulted in a girlfriend's pregnancy or their own pregnancy.

Seizing on the People's concession that persons who engage in sexual intercourse often also engage in oral copulation, the majority concludes that, therefore, the "effect of the father's mandatory registration on the mother and child does not depend on whether the registration is imposed for the act of sexual intercourse or the act of oral copulation." (Maj. opn., *ante*, at p. 1205.) While this sort of consideration might properly be raised in a case where a defendant faces mandatory lifetime registration after having committed *both* oral copulation *and* intercourse resulting in impregnation, it is, as far as this case and this defendant are concerned, entirely hypothetical and inappropriately asserted. (See *People v. Garcia* (1999) 21 Cal.4th 1, 11 [87 Cal.Rptr.2d 114, 980 P.2d 829] [defendant lacks standing to assert the equal protection claims of hypothetical felons]; *People v. Superior Court (Manuel G.)* (2002) 104 Cal.App.4th 915, 934 [128 Cal.Rptr.2d 794] [defendant must show that

---

[6] This is not an insignificant percentage of the total number of intercourse cases. Statistics defendant cites indicate that in 30 percent of the cases where teen mothers become pregnant by males over the age of 21, there is a relationship between the parents at the time the child is born that would be fiscally and socially beneficial for the state to encourage. (See Napa County, District Attorney Web Page, Statutory Rape <http://www.co.napa.ca.us/GOV/Departments/DeptPage.asp?DID=22400&LID=280> [as of Mar. 6, 2006] ["In 70% of the cases of teen mothers becoming pregnant by males over 21, the relationships end before the birth. The teens have to seek financial aid from the state. These teen families cost the state between $5 to $7 billion each year. It costs more than $10,000 for each teen pregnancy, childbirth, and medical care throughout the first year."].)

his rights are affected injuriously by the law he attacks and that he is actually aggrieved by its operation].)

In a related vein, it was suggested at oral argument on this matter that the Legislature could have addressed the special public policy concerns regarding pregnancy and familial issues by expressly limiting the availability of discretionary registration to only those section 261.5 cases involving impregnated victims. While that may have been one way to handle the matter, " '[t]he equal protection clause is not an authorization for the courts to second-guess the Legislature on the best way to deal with aspects of a problem. It protects classes of people from arbitrary discrimination.' " (*Jasperson v. Jessica's Nail Clinic* (1989) 216 Cal.App.3d 1099, 1110 [265 Cal.Rptr. 301].)

In applying the rational basis test to reject an analogous argument regarding a legislative classification, the United States Supreme Court explained: "Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.' [Citations.] The provision 'does not offend the Constitution simply because the classification "is not made with mathematical nicety . . . ." ' [Citations.] . . . [¶] . . . Whether we, or the District Court, think Congress was unwise in not choosing a means more precisely related to its primary purpose is irrelevant." (*Vance v. Bradley* (1979) 440 U.S. 93, 108–109 [59 L.Ed.2d 171, 99 S.Ct. 939], fn. omitted.) As one California court aptly observed in quoting the high court on this very point, the fact that a classification "sweeps more broadly than necessary to achieve the legislative purpose, or that other offenses could have been included [in the classification] that would have furthered the legislative purpose, does not undermine [the] conclusion that the classification adopted by the Legislature bears a fair relationship to a legitimate public purpose." (*People v. Conley* (2004) 116 Cal.App.4th 566, 576 [10 Cal.Rptr.3d 477].)

By limiting himself to an equal protection challenge, defendant essentially concedes there is an otherwise proper rational basis for requiring mandatory lifetime sex offender registration of section 288a (b)(1) offenders such as himself. Consequently, the issue before us is not—as the majority erroneously suggests—the public policy debate over whether "judicial discretion is a sufficient safeguard to protect against repeat offenders who engage in sexual intercourse but not with offenders who engage in oral copulation." (Maj. opn., *ante*, at p. 1204.) Rather, the issue is whether the two offender groups are similarly situated, and if so, whether there is *any reasonably conceivable state of facts that could provide a rational basis* for the Legislature's dual approach to registration. (*Kasler v. Lockyer, supra*, 23 Cal.4th at pp. 481–482.)

As indicated, even assuming, generously, that the two offender groups are similarly situated, the bottom line is that the Legislature had plausible rationales—based on reasonably conceivable facts related to (1) conceivably lower incident and recidivism rates for voluntary intercourse crimes and (2) the potential for pregnancy and childbearing in voluntary intercourse cases—for authorizing discretionary imposition of sex offender registration for section 261.5 offenders while mandating lifetime registration for section 288a(b)(1) offenders. Under these circumstances, no violation of equal protection principles appears.

## II.

If it were up to me, I might agree that discretionary registration would be just as appropriate in certain voluntary oral copulation cases as it is in voluntary intercourse cases. But judicial authority to second-guess the legislative determinations of the Legislature is "extremely limited," and it is well settled that " 'the legislative branch is entitled to deference from the courts because of the constitutional separation of powers.' " (*Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807, 814 [98 Cal.Rptr.2d 221, 3 P.3d 868]; see Cal. Const., art. III, § 3.) In choosing to nullify the Legislature's policy judgment requiring lifetime sex offender registration for section 288a(b)(1) offenders, the majority shows a startling disregard for the legislative prerogative to distinguish between classes of offenders whose crimes involve substantially different conduct and pose differing real-life consequences.

Although this court should not shirk its duty to declare a statute invalid when its " 'unconstitutionality clearly, positively and unmistakably appears' " (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]), the separation of powers doctrine bars us from positioning ourselves as a superlegislature willing to second-guess the plausible reasons supporting nonuniform statutory consequences for persons convicted of separate crimes that raise separate public policy concerns. Given the important and vital public purpose of section 290's mandatory lifetime sex offender registration provisions, and the rational basis underlying its alternative provision for discretionary registration for violators of section 261.5, I see no legitimate basis for the majority's disturbance of the legislative scheme.

The majority opinion is sure to prompt a spate of equal protection challenges by defendants arguing their crimes cannot be subject to punishment or any other consequence perceived as more severe than that authorized for other distinct but seemingly comparable crimes. At the very least, we may expect challenges regarding the differing sentences and registration consequences authorized for other section 288a offenders and other section 261.5 offenders. (See maj. opn., *ante*, at pp. 1195–1196.) Today's decision offers little choice but to overrule legislative values in such cases.

### III.

Defendant admits he came upon the minor victim in an Internet chat room, that they then met at a beach away from her parents, and that there he engaged her in oral copulation after furnishing her with alcohol.

In proper deference to the legislative determination that significant public safety concerns for minors justify mandatory lifetime registration for this type of high-risk sex offender, I would reverse the judgment of the Court of Appeal, and remand the matter to that court with directions to affirm the trial court judgment.