[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1430 
OPINION
Defendant Seanalan Christopher Dulan entered a negotiated plea of no contest to charges that, while over the age of 21, he engaged in sexual intercourse and oral copulation with a person under the age of 16. Among other conditions of his sentence, the trial court ordered him to register as a sex offender pursuant to Penal Code section 290 (section 290). On appeal defendant contends that this was error because the mandatory registration requirement applicable to oral copulators in his situation violates equal protection in view of the absence of such a requirement affecting those who *Page 1431 commit unlawful sexual intercourse with minors in otherwise identical circumstances. The Supreme Court recently upheld a similar challenge to the statutes' treatment of adults who engage in oral copulation with persons between 16 and 18 years of age. (People v. Hofsheier (2006)37 Cal.4th 1185, 1206 [39 Cal.Rptr.3d 821, 129 P.3d 29] (Hofsheier).) We see no basis for a different result here. Accordingly we will remand the matter with instructions to strike the registration requirement, subject to the trial court's discretionary power to impose such a requirement if it makes the particularized finding that defendant should be required to register, and otherwise complies with the provisions for such a ruling.
 BACKGROUND Because defendant pleaded no contest at an early stage of the proceedings, the only record we have of the circumstances leading to his conviction is found in the probation report. It states that defendant had sexual contacts with the victim, Jane Doe, over a six-week period in 2004, when she was a 15-year old member of a basketball team of which defendant was the 25-year old coach. The matter was reported to authorities by the victim's brother, who knew defendant and who, after growing suspicious, elicited an admission from his sister that she had a "sexual relationship" with defendant.
 A complaint was filed charging defendant with (1) unlawful sexual intercourse by a person over 21 with a person under 16 (Pen. Code, § 261.5, subd. (d)); (2) sexual penetration of a person under 16 by one over 21 (Pen. Code, § 289, subd. (i)); and (3) oral copulation with a person under 16 by one over 21 (Pen. Code, § 288a, subd. (b)(2)). It was alleged with respect to the second and third counts that conviction would require registration pursuant to section 290.
 At an early hearing, defendant entered a negotiated plea of nolo contendere to counts one (unlawful sexual intercourse) and three (unlawful oral copulation). After proceedings described more fully below, defendant acknowledged that conviction would require him to register as a sex offender. The court ultimately sentenced defendant to 12 months in the county jail, and ordered him to register as a sex offender over the express objection of defense counsel. Defendant brought this timely appeal.
 DISCUSSION
I. Preservation for Appeal
 A. Background
 Respondent contends that the nature of the proceedings below precludes defendant from challenging the registration requirement on appeal. Review of *Page 1432 this contention requires a capitulation in some detail of the proceedings leading up to the court's imposition of such a requirement.
 At the change-of-plea hearing, the court first asked that the plea agreement be placed on the record, whereupon defense counsel said, "Mr. Dulan is going to be entering a plea as to Counts 1 and 3 of the complaint. It will be a no contest plea. Count 2 will be dismissed at sentencing on the motion of the District Attorney. Conditional no state prison plea with the understanding that Mr. Dulan will receive no less than 9 months county jail, and no more than 12 months county jail. [¶] Mr. Dulan will enter a waiver of his appellate rights, and we will be going to the 859 judge, Judge Lisk, for sentencing." The prosecutor then added, "Just to clarify the waiver, he will agree to have the case sent to Judge Lisk for sentencing. The waiver of appellate rights has been negotiated in this case. That is part of the negotiated disposition. But beyond what has been stated on the record, the Court can sentence the defendant. There are no other agreements beyond what was stated on the record."
 The subject of registration did not come up until some time later. First the court informed defendant that it was "going to be advising you of certain rights, and I am going to be asking you certain questions in the next few minutes. This is to make sure that you understand exactly what is happening in your case today." The court confirmed that defendant had not consumed any substances that might affect his comprehension of proceedings, and that he had had an opportunity to discuss the matter with counsel. It secured defendant's negative answer to the question, "Besides what has been stated on the record, are there any other promises or conditions made to you in exchange for your plea of no contest?" Colloquy ensued as to whether defendant was to plead guilty or no contest. After this the court apprised defendant that the maximum sentence he faced was three years and eight months in state prison. The court said that under the plea agreement, defendant would receive a sentence of nine to 12 months in jail, that he would be subject to probation for up to five years, and that the sentencing judge might impose additional conditions of probation. The court told defendant about the parole consequences of any prison term he might receive, as well as the possible immigration consequences of conviction. It informed him that the conviction would disable him from owning or possessing a firearm. The subject of registration then first came up, as follows: "You will be required to register as a convicted sex offender with the police or Sheriff's Department of any city or county in which you reside. Failure to register as required will result in a new criminal violation. Do you understand that? [¶] THE DEFENDANT: Yes, your Honor, [¶] THE COURT: That is pursuant to *Page 1433 Penal Code 290. All right? [¶] THE DEFENDANT: Yes, your Honor, [¶] THE COURT: Registration is a lifetime requirement and includes an annual registration within days [sic] of your birth date, and within two weeks of a change of address. Do you understand that? [¶] MR. BLANK [defense counsel]: A moment, your Honor? Thank you. [¶] THE DEFENDANT: Yes, your Honor. [¶] THE COURT: Do you understand? [¶] THE DEFENDANT: Yes. [¶] THE COURT: Thank you. Counsel, you wanted to look that up because you thought the registration requirements were different, but you agree with the Court. Correct? [¶] MR. BLANK: Yes. [¶] THE COURT: Thank you. . . ."
 The court went on to describe the potential use of any prison commitment as a future sentence enhancement, as well as defendant's duty to provide a DNA sample and to pay certain fines and assessments, including registration fees under section 290 as well as Penal Code section 290.3. Then, after advising defendant of the constitutional rights he was giving up by changing his plea, the court invited the prosecutor to question him. In response to these questions, defendant confirmed that he was "giving up [his] right to appeal this conviction, or attack the conviction by a Writ of Habeas Corpus in State or Federal Court." He also acknowledged that he would "be required to provide blood, saliva, and print samples, pursuant to Penal Code sections 295 to 300.3, because this is a 290 sex registrable offense." Defendant thereupon entered his plea of no contest to the first and third counts. The court found the plea to rest on a "knowing, intelligent, free and voluntary waiver of [his] rights." The court accepted the plea and scheduled the matter for sentencing before Judge Lisk.
 Prior to sentencing, defense counsel filed a memorandum arguing that defendant should not be required to register under section 290, subdivision (a)(2)(A), because that statute's requirement of mandatory registration for oral copulation but not sexual intercourse violates the equal protection clause. He noted that two Court of Appeal decisions, both of which were pending before the Supreme Court, had reached opposite conclusions on this issue. (People v.Hofsheier* (Cal.App.); People v. Alcala*
(Cal.App.).) He also argued that application of the mandatory requirement to defendant was particularly irrational since defendant was unlikely to recidivate.
 The latter contention rested largely on a psychological evaluation attached to the probation report. Its author, a clinical psychologist, opined that defendant presented no sexual or antisocial disorders and had no paraphilic, *Page 1434 pedophilic, or predatory characteristics. He considered defendant an empathic, law abiding citizen whose anomalous conduct in this instance grew out of, and was secondary to, a deep emotional attachment to the victim, which persisted at the time of the evaluation. The evaluator attributed the attachment, and the resulting criminal conduct, to defendant's relative social immaturity and to an overidentification with Jane Doe based in part on common traits in their family backgrounds, including mixed racial heritages.[1] Ms. Doe, who was by then 16 years old, told the probation officer that defendant "should receive `the least amount of time possible,'" and, "`He is a good person, with a good heart, and he doesn't deserve this.'" With one exception, the record contains no assertion by anyone to the contrary.[2]
 At the sentencing hearing, the court suspended imposition of sentence and placed defendant on 3 years' probation on condition that he "serve a county jail sentence of 12 months. No early release programs." Additional conditions included, "No contact with the victim directly or indirectly, [¶] He must register pursuant to 290 of the Penal Code and comply with 290.85 of the Penal Code." At the conclusion of the hearing, defense counsel requested that "the record reflect the 290 registration is over the objection of the defense." The court replied, "So noted."
 B. Discussion
 Respondent contends that defendant cannot challenge the registration requirement on appeal because he failed to procure a certificate of probable cause pursuant to Penal Code section 1237.5 (see Cal. Rules of Court, rule 8.304; former Cal. Rules of Court, rule 30(b)(4)), and the registration requirement was an element of the plea bargain which defendant cannot now challenge, having received the benefit of the bargain.
 Both of these arguments depend on the premise that registration was an element of defendant's plea agreement, or what is much the same thing, that a challenge to the registration requirement is an attack on the validity of the plea. Respondent places great reliance on People v.Panizzon (1996) 13 Cal.4th 68, 74-75 [51 Cal.Rptr.2d 851,913 P.2d 1061] (Panizzon), where the court held that the defendant's challenge to a prison sentence to which hehad *Page 1435 clearly agreed was barred in the absence of a certificate of probable cause. (See id. at pp. 73-74.) The court stated that when a defendant challenges his sentence after a guilty plea, the "critical inquiry" is whether the challenge "is in substance a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (Id. at p. 76.) The agreed sentence there was "an integral part of the plea agreement." (Id. at p. 78.) The trial court had done nothing more than impose the sentence to which the defendant had agreed. (Ibid.) "[B]y contesting the constitutionality of the very sentence he negotiated as part of the plea bargain," the defendant was, "in substance, attacking the validity of the plea." (Ibid.) Accordingly, the absence of a certificate was fatal to his appeal. (Ibid.) The court distinguished cases involving challenges to sentencing decisions that "were clearly separate and distinct from the defendants' pleas, in substance as well as temporally. . . ." (Ibid.)
 In an attempt to bring this case under the holding of Panizzon, respondent asserts repeatedly that defendant "agreed to register as a sex offender" upon his release from jail, and that this was a "provision? of the plea bargain." Indeed respondent goes so far as to state that at the plea hearing, "Appellant informed the court that hehad agreed to: . . . (4) register as a sex offender upon his release from custody." These statements are demonstrably false and the last, at least, verges on an affirmative misrepresentation of the record. There is no evidence whatever that defendant agreed to register as a sex offender, that there was any negotiation over such a term, or that the prosecution's acceptance of the plea bargain was conditioned on such a term. As set forth at length above, the terms of the plea agreement were recited quite explicitly by defense counsel, with the prosecutor chiming in to "clarify the waiver" and to then declare, "There are no other agreements beyond what wasstated on the record." No reference to registration preceded these statements. The first allusion to registration occurred four pages later when, in the midst of a long series of advisements concerning the legal consequences of hisplea, the court informed defendant that he would "be required to register as a convicted sex offender." The court then permitted defense counsel "a moment" to "look that up because [he] thought the registration requirements were different," but counsel ultimately acceded to the court's reading of the statutes. The prosecutor sat mute throughout this exchange, without suggesting that the plea bargain, of its own force, required defendant to register. Indeed the prosecutornever raised any such suggestion, even when defense counsel filed a memorandum formally objecting to registration as a denial of equal protection, and when counsel stated for the record, with the court's accession, that registration was being imposed over defense objection. *Page 1436 
 The record thus unambiguously contradicts respondent's assertion that registration was a term of the plea agreement, establishing instead that it was discussed only as alegal consequence that would necessarily follow from the plea under the governing statutes. If anything has been waived, it is the state's belated claim that registration was a term of the plea bargain. The place to raise that point was in the trial court, where conflicting reports of the negotiations might have been heard and resolved, and a record made for our review. But so far as the record shows, there were no conflicting reports. Registration was never a subject of negotiation, and never became a term of the plea agreement. The question whether it was lawfully imposed is therefore squarely and properly before us.
 We do not understand respondent to place any reliance on defendant's "waiver of his appellate rights," which clearly was a negotiated term of the plea agreement. It is not suggested that this waiver was intended to extend to nonnegotiated aspects of sentencing, such as the imposition of the registration requirement. It is therefore unnecessary to reach the question whether an explicit waiver of sentencing error would be effective. (See Panizzon, supra,13 Cal.4th at p. 85, and cases cited.)
 Defendant is entitled to appellate consideration of his challenge to the constitutionality of the registration requirement.
II. Mandatory Registration
 Section 290 is a tangle of cross-references, tangents, parentheses, and elaborations.[3] As applicable here, the core of the statute is its declaration that "[e]very person described in paragraph (2) . . . shall be required to register" as a sex offender. (§ 290, subd. (a)(1)(A).) The first subdivision of the cross-referenced paragraph lists code sections whose violation automatically subjects the offender to the registration requirement. (§ 290, subd. (a)(2)(A).) A later subdivision provides that in cases not subject to mandatory registration, a sentencing court may still impose a registration requirement under certain conditions. (§ 290, subd. (a)(2)(E).)[4] Invocation of this provision entails "a two-step process. . . ." (Hofsheier, supra,37 Cal.4th at p. 1197.) *Page 1437 First the court must determine "whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings. . . ." (Id. at pp. 1196-1197.) Then the court must "state the reasons for requiring lifetime registration as a sex offender." (Id. at p. 1197.) "By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (Ibid.) The Supreme Court implied in Hofsheier that the purpose of this discretionary power is to guard against "repeat offenders" whose sexually motivated crimes do not fall within the statutes triggering mandatory registration. (Id. at p. 1203.) It stands to reason that an order for registration can be sustained only if the record supports a rational perception that the defendant is a likely repeat offender.
 Here defendant pleaded no contest to violating two statutes: Penal Code section 288a (section 288a), which as relevant here makes it a crime to engage in oral copulation with a person under the age of 18, and Penal Code section 261.5
(section 261.5), which as applicable here makes it a crime to commit "unlawful sexual intercourse," i.e., an act of sexual intercourse with a minor.[5] Both statutes vary the punishment in accordance with the age of the victim and the difference in age between the victim and the defendant, though they take different approaches with potentially disparate results in a variety of circumstances. We are more immediately concerned with the disparities between the two statutes as they affect the defendant's duty to register as a sex offender. All
violations of section 288a trigger a mandatory duty to register under section 290, subdivision (a)(2)(A), while no
violations of section 261.5 trigger such a duty. Had defendant been convicted only under section 261.5, he could have been required to register as a sex offender only after the trial court found him an appropriate candidate for such a requirement under section 290, subdivision (a)(2)(E). Thus a person convicted only of violating section 261.5, and who presents no discernible risk of reoffending, may not be required to register. But the same defendant, if convicted of oral copulation in otherwise identical circumstances, falls under the mandatory registration requirement, and must register whether or not he can rationally be viewed as a likely recidivist.
 In Hofsheier, supra,37 Cal.4th at p. 1192, this disparity in treatment was held to violate equal protection insofar as it imposed a mandatory *Page 1438 registration requirement on those convicted of oral copulation with persons between the ages of 16 and 18. The question before us is whether the reasoning of that case extends to a case like this one, where the victim falls below age 16. As a practical matter the relevant group is victims aged 14 to 16, because any "lewd and lascivious act" with a person under 14 is a violation of Penal Code section 288, which subjects the perpetrator to mandatory registration under section 290, subdivision (a)(2)(A). Thus the central question here, as there, is whether the Legislature could have a rational basis for imposing an automatic lifelong registration requirement on those who engage in oral copulation with persons between 14 and 16, while subjecting those who engage in genital copulation with an identical victim to registration only upon specialized consideration and findings by the trial court.
 We see no more ground here for an affirmative answer than the Supreme Court found in Hofsheier. The court there discussed at length the meaning and application of the "rational basis" test for a legislative classification challenged under the equal protection clause.[6]
(Hofsheier, supra, 37 Cal.4th at pp. 1199-1201.) The test demands more in support of such a classification than an abstract hypothetical rationale floating on an imagined state of facts. When presented with a potential reason for disparate legislative treatments, courts must "determine whether the asserted rationale . . . rests on `plausible reasons,' or on `reasonably conceivable' facts that could provide `rational' grounds for the classification [citation], and not upon `fictitious purposes' that the Legislature could not have contemplated [citation]." (Id. at p. 1203.) Application of the test also requires inquiry into "the relationship between the classification and the statutory purpose." (Id. at p. 1203.) Under those standards, the court could find no justification for the disparity in treatment between oral copulators and genital copulators.
 The avowed purpose of the statute mandating registration for those committing specified offenses is "`"`to assure that [such] persons . . . shall be readily available for police surveillance at all times because the Legislaturedeemed them likely to commit similar offenses in thefuture. [Citation.]'"'" (Hofsheier, supra,37 Cal.4th at p. 1196, italics added, quoting In re Alva
(2004) 33 Cal.4th 254, 264 [14 Cal.Rptr.3d 811, 92 P.3d 311].) "In recent years, section 290 registration has acquired a second purpose: to notify members of the public of the existence and location of sex offenders so they can take protective measures." (Hofsheier, supra, at p. 1196.) *Page 1439 
 The court noted that the Legislature had repeatedly "considered and rejected proposals that would require registration for sexual intercourse with a minor in violation of section 261.5." (Hofsheier, supra,37 Cal.4th at p. 1206.) The Legislature's steadfast refusal to do so, while continuing to impose mandatory registration for oral copulation of victims in the same age group, could not be defended as an incomplete, incremental, or experimental unfolding of legislative intentions, but had to be evaluated as a "comprehensive, enduring statutory scheme. . . ." (Ibid.) So viewed, the classification under scrutiny failed the rational basis test. It could not be sustained based upon the "speculative possibility" that oral copulators were "more likely to reoffend" than genital copulators of persons in the same age group. (Id. at p. 1204.) The Legislature had impliedly found that the risk of reoffending by the latter class of offenders was adequately addressed by the trial court's discretionary power to impose a registration requirement under section 290, subdivision (a)(2)(E). To sustain the categorical imposition of registration on all oral copulators required "some plausible reason, based on reasonably conceivable facts, why judicial discretion is a sufficient safeguard to protect against repeat offenders who engage in sexual intercourse but not with offenders who engage in oral copulation." (Hofsheier,supra, 37 Cal.4th at p. 1204, fn. omitted.) The court acknowledged that some perpetrators of oral copulation with 16-to-18-year olds doubtless presented a risk of reoffending, but "the same can be said of some individuals convicted of unlawful intercourse with minors in that same age group. The existence of such potential recidivists under both statutes argues for discretionary registration depending on the facts of the case rather than mandatory registration for all persons convicted under section 288a(b)(1)." (Id. at p. 1204.)
 Indeed the classification did not appear to rest on a legislative judgment that oral copulators of minors are more likely to reoffend than those who commit unlawful sexual intercourse with minors. (Hofsheier, supra,37 Cal.4th at pp. 1202-1203.) Instead it appeared to be the product of accidents of statutory evolution. It originated with the inclusion of oral copulation in the original 1947 version of section 209, when such conduct between consentingadults was a crime, though sexual intercourse was not.[7] (37 Cal.4th at p. 1205.) The continuing categorical imposition of a registration requirement on oral copulators of minors, but not on those who engage in intercourse with them, appeared to be nothing more than "a historical atavism dating back to a law repealed over 30 years ago that treated all oral copulation as criminal regardless of age or consent." (Id. at p. 1206.)
 The court also considered a proposed rationale based on the query in a legislative committee report, "`How many [teenage] mothers would want the *Page 1440 father of their child to plead guilty to statutory rape and be subject to a [lifetime] registration requirement?'" (Hofsheier, supra,37 Cal.4th at p. 1204, quoting Assem. Com. on Public Safety, Rep. on Assem. Bill No. 1303 (1997-1998 Reg. Sess.) Apr. 22, 1997, p. 4.) This extremely vague and noncommittal nonassertion became the basis for an argument that "the possibility of pregnancy distinguishes voluntary sexual intercourse from voluntary oral copulation, because requiring the father to register as a sex criminal might stigmatize both the mother and the child, and might harm the father's ability to support his child." (Hofsheier,supra, 37 Cal.4th at p. 1205.)
 This rationale posits a twofold legislative purpose for exempting genital copulators, but not oral copulators, from mandatory registration: (1) to reduce reputational harm to victims and offspring that may result from the offenderparent's registration;[8] and (2) to reduce reputational harm to the offender, which may injure the victim and offspring by diminishing the offender's ability to provide support. Had these actually been the Legislature's goals, it could hardly have picked a less apt way to achieve them than by exempting all unlawful fornicators while requiring registration of all oral copulators. As the court observed, people who impregnate teenage girls "often also engage in oral copulation" with them. (Hofsheier, supra,37 Cal.4th at p. 1204.) If convicted of the latter offense, they will fall under the mandatory registration requirement regardless of the stigma it may impose on mother and child, and despite any impairment of the defendant's ability to support them. The classification is therefore underinclusive; it fails to protect all those supposed, under this rationale, to be protected. The classification is also grossly overinclusive, because it protects all genital copulators from mandatory registration — provided they do not also commit a registerable offense — whether or not their conduct leads to pregnancy and parenthood.
 It is of course true that over-or underinclusiveness is not inherently fatal to a statutory classification. (Hofsheier, supra,37 Cal.4th at pp. 1214-1215.) The Legislature is not required to precisely tailor statutory classifications to perfectly meet judicial notions of aptness. (See id. at p. 1215 (dis. opn. of Baxter, J.), quoting Vance v. Bradley (1979) 440 U.S. 93, 108-109
[59 L.Ed.2d 171, 99 S.Ct. 939] [noting that "`perfection is by no means required,'" and that a statute "`does not offend the Constitution simply because the classification "is not made with mathematical nicety"'"].) But failure to adopt an obviously available and more effective means to reach a *Page 1441 particular goal has some logical bearing on the "rationality" of a proffered reason for disparate treatment. Here the Legislature could easily have addressed the posited objectives, without the under-and overinclusiveness noted above, by declaring that any offender who has caused his (or her) victim to become a parent is not subject to mandatory registration.
 Respondent attempts to distinguishHofsheier on the ground that the holding there rested in part on the fact that oral copulators of 16 year olds are subject to the same punishment as genital copulators of 16 year olds, whereas the punishment for oral copulators of 14 and 15 year olds is not the same as that for genital copulators of members of the same age group. It is true that where the perpetrator is over 21 and the victim is over 16, as was the case in Hofsheier, the punishments for both offenses are identical: imprisonment in county jail for up to one year, or imprisonment in state prison for up to three years. (§ 288a, subd. (b)(1); § 261.5, subd. (c); Pen. Code, §18.) In contrast, when the perpetrator is over 21 and the victim is under 16, as is the situation here, the range of punishment for unlawful intercourse is wider than that for oral copulation. Oral copulation in such a situation is declared a straight felony (§ 288a, subd. (b)(2)), making it punishable by up to three years in state prison (Pen. Code, § 18). Unlawful intercourse in the same circumstances is "either a misdemeanor or a felony," but if treated as a felony is punishable by up to four years in state prison. (§ 261.5, subd. (d).)
 Citing this discrepancy, respondent contends, "Because the Legislature has chosen to punish the crimes of oral copulation and statutory rape differently when the victim is younger than 16, the Legislature may also rationally subject the crimes to different registration requirements." This is a non sequitur. One disparity in treatment of persons similarly situated, even if presumed to rest on a rational basis, cannot justify a second, distinct disparity in treatment. It is of course possible that the first disparity will suggest an underlying rationale for the second, thereby helping to establish a rational basis for it. But respondent offers no explanation for the disparity in punishments, let alone one that might tend to explain the disparity in registration.
 In sum, we find no coherent basis to distinguish this case from Hofsheier. Because the discrepancy in treatment of oral copulators of 16 year olds violates equal protection, the same discrepancy in the treatment of oral copulators of 14 year olds likewise violates equal protection. If defendant is to be required to register as a sex offender, it must be the result of a proper exercise of the trial court's discretion under section 290, subdivision (a)(2)(E) *Page 1442 
 DISPOSITION The judgment is reversed with directions to strike the registration requirement and to reinstate the judgment as so modified unless, after further proceedings consistent with this opinion, the trial court determines, in accordance with section 290 subdivision (a)(2)(E), that defendant should be required to register.
 Premo, J., and Elia, J., concurred.
* Reporter's Note: Review granted inPeople v. Hofsheier on June 9, 2004, S124636; for Supreme Court opinion, see 37 Cal.4th 1185. Review granted in People v. Alcala on August 25, 2004, S125898, and cause transferred to Court of Appeal, Third Appellate District, with directions.
[1] Although we do not profess to be psychologists, we believe these opinions translate roughly into the idea that defendant was in love with Jane Doe.
[2] Someone has underlined the concluding phrase of the evaluation ("anomalous behaviors on his part") and added the following handwritten comment: "Oh! Really — severe [series of?] aggressive acts on a young person[.] Anomalous Wrong! Predatory!"
[3] At this writing, the statute has been amended 20 times since the beginning of 2000.
[4] "Any person [may be] ordered by any court to register pursuant to this section for any offense not included specifically in this section if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (§ 290, subd. (a)(2)(E).)
[5] Respondent refers to this offense as "statutory rape," but as reflected in our opinion inDonaldson v. Department of Real Estate (2005) 134 Cal.App.4th 948 [36 Cal.Rptr.3d 577], that term is burdened with obsolete connotations bearing on the concept of consent as affected by age. For that reason we eschew that term and refer to the offense described by section 261.5 as "unlawful sexual intercourse" and, occasionally, "unlawful genital copulation."
[6] The court used the term "rational basis" pervasively, although it introduced the governing rule as the "rational relationship" test. (Hofsheier, supra,37 Cal.4th at p. 1200 ["most legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose"].
[7] Presumably the Legislature could rationally find in 1947, as now, that adults who engage in consensual oral copulation with other adults are categorically likely to "reoffend."
[8] The supposition that registration mayharm the victim is remarkable in more ways than one. It appears to rest on the idea that registration may tend to produce more widespread knowledge of the offense, perhaps including the identity of its victim, who thereby suffers reputational harm. But this is an argument against registration altogether, or at least for a more particularized consideration of its appropriateness in specific cases — not an argument for excusing one class of offenders, but not others, from the requirement. *Page 1443