Filed 12/16/14  P. v. Freeman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C075529 |
| Plaintiff and Respondent, | (Super. Ct. No. P12CRF0242) |
| v. | |
| DAVID ROBERT FREEMAN, | |
| Defendant and Appellant. | |

Defendant David Robert Freeman was a 34-year-old high school teacher who repeatedly initiated sexual intercourse with and oral copulation of his 17-year-old student (the victim), whom he also had asked to be his children's babysitter.  Defendant pled no contest to nine counts of unlawful sexual intercourse with a minor who was more than three years younger (Pen. Code,[1] § 261.5, subd. (c)) and four counts of orally copulating

---

[1]    All further section references are to the Penal Code.

1

a minor (§ 288a, subd. (b)).  The court sentenced defendant to three years and eight months in prison and ordered him to register as a sex offender.

This appeal challenges the sex offender registration requirement in four respects.  One, defendant contends there was insufficient evidence to require sex offender registration.  Two, defendant contends the trial court failed to take the two required steps for imposing a discretionary sex offender registration requirement, namely "(1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197 (*Hofsheier*).)  Three, to the extent the second contention is forfeited, defendant contends counsel was ineffective.  And four, the trial court erred in not allowing defendant a jury trial on the factual predicates necessary for imposition of discretionary sex offender registration.

We disagree with defendant.  One, there was sufficient evidence to require sex offender registration.  Two, defendant forfeited his contention that the court failed to take the required two steps.  Three, defense counsel was not ineffective because her failure to object did not prejudice defendant.  And four, regardless of whether a jury trial is required for the factual predicates required for discretionary registration, any error was harmless because we conclude beyond a reasonable doubt that a jury would have found those factual predicates true.  We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A

*The Crimes*

Defendant met the victim when he was her high school physical education teacher.  At the end of the victim's sophomore year when she turned 16, defendant established a relationship with her outside of school by asking her to babysit his children.  At the beginning of the victim's senior year, defendant made her his teaching assistant.  When

2

the victim was no longer eligible to be his teaching assistant in January 2009, defendant "set [it] up" so the victim would be enrolled in another teacher's physical education class but would act as a teaching assistant for defendant. During that time, the victim would be "just hanging out with [defendant]."

A month later, in February 2009, defendant began flirting with victim, telling her in text messages that she was "beautiful" and "had a nice ass."

In the first or second week of March 2009, defendant initiated sexual contact with the victim. The victim had just finished babysitting defendant's children. As the victim was walking out of defendant's house, he grabbed her bottom, turned her around, put her "against a wall," and kissed her. He also touched her vagina over her dress and then over her underwear. This lasted about 20 minutes, after which the victim left in her car. The victim found defendant's conduct unexpected, unwanted, and "so inappropriate." As she was driving away, defendant texted her "he couldn't resist" "[b]ecause [she] was so beautiful" and asked her not to tell anybody. He texted her again later that night, blaming his behavior on having too much to drink, although the victim had not smelled alcohol on defendant's breath. The next day at school, defendant said "he was sorry for putting [the victim] in that position, [and] it wouldn't happen again."

Later on in text messages, defendant told the victim he wanted to have sex with her when she turned 18. He told her when she turned 18, he "could get in less trouble" and was worried "that he would lose his job, he would go to jail, [and] he would lose his children." He texted her messages in which he "counted down" the days until her 18th birthday, which was at the end of April 2009. He also told her he was going to leave his wife for her.

Around the middle of March, defendant initiated sex with the victim. It was afternoon and the victim was babysitting defendant's younger daughter, who was asleep.[2] Defendant unexpectedly came home early and, without saying a word, walked over to the victim, lifted up her dress, pulled down her underwear, and orally copulated her. Defendant then led the victim to the son's room where he had intercourse with her. He then asked her not to tell anybody and to take the "morning after pill." The victim responded that she was not 18 yet and could not get it, so she would have to ask her friend who worked at a pharmacy to get it for her.

After having sex this first time and until the victim's 18th birthday in April, defendant continued having sex with the victim at his house three to four times per week. Sometimes defendant also orally copulated the victim. Once, during this time period, defendant asked the victim to spend the night at his house while his wife was away. He had the victim park her car in the garage, and he put tarps over the windows in the garage to conceal her car from the neighbor's view. They had vaginal and oral sex continuously through the night.

Defendant continued pursuing a sexual relationship with the victim after she turned 18. The victim ended the relationship in June 2009 when two classmates who graduated with the victim saw defendant and the victim kissing on the campus of a middle school. The news "spread like wildfire," and her mother confronted her. The victim denied it at first to "protect[] [defendant] because he was asking [the victim] to." She later told her mother that they had sex when she turned 18, again to "protect[] [defendant.]"

---

[2] The older son was at school.

A month later, in July 2009, the victim finally told her mom the truth because defendant "wouldn't leave [the victim] alone." He left notes on her car, gave her his new phone number, and she "couldn't take it anymore" because she was "trying to move on."

Over two years later, in November 2011, the victim told police what had happened, but only because she had just been approached about her relationship with defendant by the administration of her former high school where defendant still was a teacher.

In January 2012, the victim made a pretext phone call to defendant. The victim said that the school district had called her and set up a meeting for tomorrow, and she asked defendant what she should say. He "beg[ged] [her and her family] to say . . . it was . . . an incident that happened in July of 2009[3] after [she] graduated." He was "doing everything [he] c[ould] to get out of [the high school]" but had not been able to do so yet because he could not find a different job. The victim said she thought she "need[ed] to tell them that [they] had sex before [she] was 18." Defendant responded "if you do that, then that means um my kids are gonna have no dad basically." When the victim asked why she should "try to protect you guys," defendant responded that "all [he] c[ould] ask is that . . . [she] try to think of [his] kids."

The day after this pretext call, on January 5, 2012, police arrested defendant. Defendant denied having sex with the victim before her 18th birthday and denied performing any acts of oral copulation on her. The police then played the recording of the pretext call, defendant requested an attorney, and police ended the interview.

---

**3** Defendant was referring to the kissing incident on the middle school campus witnessed by two students.

5

B

*Court Filings And Proceedings*

On September 24, 2013, defendant entered his no contest plea. At the end of the plea hearing, the prosecutor stated defendant did not sign the part of the plea form regarding whether or not sex offender registration was required "because it is a discretionary registration as to these particular charges." The court then stated, "it's my understanding that everybody agrees that the issue of the 290 registration is discretionary" "based on the charges that [defendant] has pled to." Defense counsel stated that it was based on "the Hofsheier case." The court asked if "[e]verybody agrees with that," and the prosecutor responded, "Yes."

In November 2013, in between his plea and sentencing, defendant separated from his wife.

On November 26, 2013, the probation officer submitted her report and recommendation. Defendant scored zero on the Static-99R, which was an actuarial measure of risk for sexual offense recidivism, which placed him in the low category of being convicted of another sexual offense if released on probation. The probation officer recommended three years eight months in prison because he took advantage of his student, whom he brought into his house as a babysitter. Regarding sex offender registration, the probation officer stated the victim "felt it was important [defendant] register as a sex offender" and later in the report recommended, "defendant shall register as a sex offender pursuant to §290 of the Penal Code."

On December 3, 2013, defense counsel filed her sentencing brief. She urged the court to grant defendant probation. In it, she explained that sex offender registration here was in the court's discretion and argued against registration because defendant "poses little or no threat to the public." She noted the probation report did not contain any analysis of registration, so it was "not clear whether probation considered registration to even be discretionary in this case." She also attached a psychological evaluation of

6

defendant she had commissioned. At the time defendant began engaging the victim in a sexual relationship, he was experiencing emotional strife because of "marital difficulties" with his wife. Having the sexual relationship with the victim helped him cope with his emotional strife. The psychological evaluation concluded that "with treatment [defendant] does not present as a danger to the public and [is] unlikely to commit similar offenses in the future."

On December 4, 2013, the prosecutor filed her sentencing brief. In it, she explained that sex registration here was in the court's discretion and argued for registration. The purpose of defendant's sex offenses was sexual gratification because he pursued sex, as opposed to simply an emotional connection. Defendant committed the crimes out of sexual compulsion because, as defendant himself said, he could not resist the victim. Registration here was necessary to protect society. Defendant was not deterred "despite knowing the victim was a minor, despite being 19 years older than the victim, despite being married, and despite being a trusted teacher." "He was willing to cross all of these lines and boundaries, both personal and societal, to gratify his own sexual needs and satisfy his compulsion. If he was not deterred by these factors from committing his instant offenses, he is likely to offend again."

On December 6, 2013, the court held the sentencing hearing at which it stated it had considered the probation report, the prosecutor's sentencing brief, and defense counsel's sentencing brief.

The prosecutor then read a letter from the victim. At the time she "consented" to the relationship with defendant, she was "so emotionally broken" because her "father had been battling a life changing illness [that] would eventually take his life." Going to defendant's house as the family babysitter "was a great distraction from what was happening at [her] home." Defendant "knew how vulnerable and weak [she] was," "took control of [her] emotions," and "promised [her they] would live a fairytale life together in the future." He did "everything in his power to cover up the crime he had actually

7

committed." The victim "firmly believe[d] that if [she] weren't truthful another young female would be in the same situation [she] was in," which is "the reason why [defendant] should not be allowed in close proximity to young females or ever have the right to be in an authoritative position."

The victim's mother then read her own statement in which she noted defendant's crimes were "all about him" and she "pray[ed]" he was required to "register[] as a sex offender to hopefully prevent him from ever touching another young girl."

Defense counsel stated that it was not "necessary to make [defendant] register as a sex offender or to send him to prison to ensure that he not commit this conduct again."

The court then explained why it was selecting a prison term instead of probation for defendant; namely, because it was important to send a message that conduct like this will not be tolerated. Thereafter it sentenced defendant to three years and eight months in prison. The court then stated, "I am going to order that [defendant] register as a sex offender pursuant to 290 of the Penal Code."

Defense counsel filed a notice of appeal and a statement of points to be raised on appeal. In it, she stated that the court "did not make adequate findings that [defendant] is likely to commit similar offenses in the future" before imposing the sex offender registration.

DISCUSSION

I

*There Was Sufficient Evidence To Require Sex Offender Registration*

Defendant contends there was insufficient evidence to impose the sex offender registration because there was no evidence that defendant would reoffend. Not so.

A

*The Law Regarding Sex Offender Registration*

In California, registration for sex offenders is either mandatory or discretionary. Sex offender registration is mandatory for defendants convicted of offenses listed in

8

section 290, subdivision (c).  (§ 290, subd. (b).)  Sex offender registration is discretionary for "any offense not included specifically in subdivision (c) of Section 290" "if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (§ 290.006.)

The California Supreme Court has somewhat altered these statutory provisions. Although oral copulation as defined in section 288a is listed as an offense subject to mandatory registration while voluntary sexual intercourse with a minor of the same age as defined in section 261.5, subdivision (c) is not (§ 290, subd. (c)), the California Supreme Court has held "that the statutory distinction in section 290 requiring mandatory lifetime registration of all persons who . . . were convicted of voluntary oral copulation with a minor of the age of 16 or 17, but not of someone convicted of voluntary sexual intercourse with a minor of the same age, violates the equal protection clauses of the federal and state Constitutions." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1207.)  Thus, registration was only discretionary under section 290.006 for all the crimes of which defendant was convicted.

Regarding discretionary registration, the court "should . . . consider all relevant information available to it" and based on that information assess the "likelihood that the defendant will reoffend" and the "necessity for registration." (*People v. Garcia* (2008) 161 Cal.App.4th 475, 483-485, disapproved on other grounds by *People v. Picklesimer* (2010) 48 Cal.4th 330, 338-339, fn. 4; see also *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431.)

B

*There Was Sufficient Evidence Defendant Was Likely*

*To Reoffend, Necessitating Registration*

Here, there was evidence defendant was likely to reoffend because there was evidence that defendant cultivated a predatory sexual relationship with a minor victim as a means of dealing with emotional strife, he was still facing significant emotional strife, and he repeatedly could not control his sexual impulses even though he knew they were wrong and could lead to serious consequences.

At the time defendant began engaging the victim in a sexual relationship, he was experiencing emotional strife because of "marital difficulties" with his wife. Having the sexual relationship with the victim helped him cope with his emotional strife. However, he did not simply fall into a sexual relationship with another person; rather, he slowly cultivated a sexual relationship with a minor victim over whom he was an authority figure. He ingratiated himself more into her life by having her become his children's babysitter and illegitimately prolonging her role as his teaching assistant to have further access to her.

He was likely to reoffend because he was still undergoing such strife (as demonstrated by his recent separation with his wife) and has demonstrated an inability to control his actions, necessitating registration, even when he knew he could face jail, the loss of his marriage, and the loss of his children. For example, he told the minor victim the reason he initially kissed her and fondled her was that he could not resist her. Then, knowing that having sex with her when she was a minor was illegal, he tried to wait until she was 18 to have sex with her, but could not. Even after she turned 18, had ended the relationship, and was "trying to move on," defendant "wouldn't leave [the victim] alone." He left notes on her car and gave her his new phone number.

Thus, there was evidence that defendant was likely to reoffend and registration was necessary because defendant repeatedly has been unable to control his sexual

impulses and the stressors he claims were the reasons he sought out the inappropriate sexual relationship still exist.

## II

### *Defendant Has Forfeited His Claim That The Trial Court Did Not Take The Two Steps Required To Impose Discretionary Sex Offender Registration*

Defendant contends the trial court failed to take the two required steps for imposing discretionary sex offender registration, namely, (1) finding that offenses were committed because of sexual compulsion or for sexual gratification and stating the reasons for its finding; and (2) stating the reasons for requiring registration.

Before a court imposes discretionary registration, "the trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) Here, the court did neither, stating only, "I am going to order that [defendant] register as a sex offender pursuant to 290 of the Penal Code."

However, defense counsel did not object to the court's failure. "It is now settled a defendant cannot complain for the first time on appeal about the court's failure to state reasons for a sentencing choice." (*People v. Bautista* (1998) 63 Cal.App.4th 865, 868.) *Bautista* was a case in which the trial court imposed discretionary sex offender registration stating only, "'I find it's appropriate in this case in view of the circumstances surrounding the offense." (*Id*. at p. 867.) The defendant argued on appeal "the matter must be remanded for the court to provide a statement of reasons for requiring

11

registration."**4** (*Id*. at p. 867.) The Fifth District Court of Appeal disagreed, finding the issue forfeited because "[t]his routine defect could easily have been prevented and corrected had it been brought to the court's attention." (*Id*. at p. 868, citing *People v. Scott* (1994) 9 Cal. 4th 331, 353.)

As support for his argument that no objection was needed, defendant cites *People v. Bonnetta* (2009) 46 Cal.4th 143, a case in which the trial court failed to enter in the minutes its reasons for striking additional terms of imprisonment contained in the enhancements, as required by section 1385, subdivision (a), even though the reasons appeared in the transcript of the oral proceedings. (*Bonnetta*, at pp. 145-146.) The California Supreme Court in *Bonnetta* held that the order dismissing the enhancements had to be reversed. (*Id*. at p. 146.) In doing so, it rejected the argument that *Scott*'s "waiver" rule applied. (*Bonnetta*, at p. 152.) Our Supreme Court explained as follows: "because a minute order is entered by the court only *after* the hearing, the district attorney cannot easily ensure that it is entered or detect its absence. Moreover, the failure to set forth the reasons for a dismissal in an order entered upon the minutes is not a routine defect in sentencing. It is a violation of a mandatory requirement put in place to benefit the public by assuring that a court through neglect or abuse of discretion has not misused the 'great power' of dismissal." (*Ibid*.)

*Bonnetta* is distinguishable. Here, defense counsel easily could have called to the court's attention its failure to " (1) . . . find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) . . . state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) Indeed, counsel appeared to be

---

**4** In *Bautista* and here, the Attorney General did not raise forfeiture in the respondent's brief and instead argued in the respondent's brief that remand was required. (*People v. Bautista*, *supra*, 63 Cal.App.4th at pp. 867-868.)

aware of at least some perceived shortcomings with the manner in which the trial court imposed registration, because in the notice of appeal that she filed, defense counsel stated, the court "did not make adequate findings that [defendant] is likely to commit similar offenses in the future" before imposing the sex offender registration. Moreover, this case does not involve the trial court's " 'great power' of dismissal," (*People v. Bonnetta*, *supra*, 46 Cal.4th at p. 152) but rather, a discretionary sentencing choice of whether to require sex offender registration.

Before ending our discussion of forfeiture, we pause to address two additional points raised by defendant as to why the forfeiture rule should not apply.

The first point defendant raises is that it is unclear whether the trial court even understood that it had the discretion not to impose sex offender registration. Defendant's argument is based on the fact that the probation report failed to state that registration was discretionary and the trial court failed to state any reasons for imposing registration. This argument ignores other parts of the record that unequivocally demonstrate the court knew of its discretion. At the plea hearing, the court then stated, "it's my understanding that everybody agrees that the issue of the 290 registration is discretionary" "based on the charges that [defendant] has pled to." Defense counsel stated that it was based on "the Hofsheier case." The court asked if "[e]verybody agrees with that," and the prosecutor responded, "Yes." Furthermore, the later-filed sentencing briefs of the prosecutor and defense counsel explained in detail the law of discretionary sex offender registration and then applied that law to the facts of this case. The court stated it had read those briefs. Finally, at the sentencing hearing, the prosecutor "strongly urge[d] . . . registration" and referred back to what she had "laid out to the Court" in her sentencing brief. Given these facts, the court understood that sex offender registration here was discretionary.

The second point defendant raises is that it is unclear whether the court understood that retribution and punishment were not proper considerations in determining whether to impose sex offender registration. Defendant's argument is based on the fact that the trial

13

court selected a prison term instead of probation because it was important to send a message that conduct like this will not be tolerated. However, there is no evidence the trial court thought that retribution or punishment were proper in analyzing whether sex offender registration was appropriate here. To the contrary, the briefs submitted by the parties explained the proper factors to be considered under section 290.006 and *Hofsheier*.

In summary, defendant has forfeited his claim regarding sex offender registration because defense counsel failed to object that the trial court did not " (1) . . . find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) . . . state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.)

III

*Defense Counsel Was Not Ineffective For Failing To Object To The Court*
*Not Stating Reasons For The Sex Offender Registration Because There Was No Prejudice*

Defendant contends that if, as we have determined, his challenge to the sex offender registration is forfeited, his counsel was ineffective for failing to object. There are two prongs to an ineffective assistance of counsel argument: deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 677-678 [80 L.Ed.2d 674, 687].) Without deciding if counsel was deficient in failing to object, there was no prejudice, as we explain below. (*Id.* at p. 697 [80 L.Ed.2d at p. 699] [an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"].)

To prevail on the prejudice prong of an ineffective assistance of counsel challenge, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

14

reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694 [80 L.Ed.2d at p. 698].)

Defendant on appeal makes three arguments as to why the failure to object was prejudicial. One, the trial court failed to demonstrate a proper understanding of its discretion. Two, substantial evidence did not support the registration order. And three, the trial court improperly considered punishment or retribution in imposing the sex offender registration. We have rejected all three of these arguments in parts I and II of the Discussion. Therefore, defendant has failed to persuade us that the result of the proceeding would have been different had defense counsel objected to the trial court's failure.

IV

*There Was No Prejudice In The Lack Of Jury Trial On The Factual*

*Issues Required To Impose Discretionary Registration*

Defendant's final contention is the trial court erred in not holding a jury trial on facts required for the trial court to impose discretionary registration. We disagree, because even if there was error, there was no prejudice.

Subdivision (b) of section 3003.5, enacted as part of Jessica's Law in 2006, provides that "[n]otwithstanding any other provision of law, it is unlawful for any person for whom [sex offender] registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather."

Defendant contends the residency restriction makes sex offender registration "punishment," and thus the facts required for the trial court to impose a sex offender registration requirement on him under section 290.006 had to be found by a jury beyond a reasonable doubt under the rule of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147

15

L.Ed.2d 435].  Because no such jury finding was made here, defendant concludes the sex offender registration requirement should be stricken from the judgment.[5]

Defendant did not object to the lack of jury trial.  Even if this did not forfeit his claim on appeal, and even if the trial court erred in requiring him to register as a sex offender without having a jury find the predicate facts required to impose a registration requirement under section 290.006, *Apprendi* error is not reversible per se.  Rather, "we must determine whether, if the question of the existence of an aggravating circumstance or circumstances had been submitted to the jury, the jury's verdict would have authorized the upper term sentence."  (*People v. Sandoval* (2007) 41 Cal.4th 825, 838.)  "[I]f [we] conclude[], beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless."  (*Id*. at p. 839.)

As we have explained, in *Hofsheier*, our Supreme Court stated , "the trial court must engage in a two-step process:  (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender."  (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.)

Here, defendant told the minor victim the reason he initially kissed her and fondled her was that he could not resist her.  Then, knowing that having sex with her when she was a minor was illegal, he began a countdown to the victim's 18th birthday.  Still, defendant initiated sex with the victim before she turned 18, when he caught the

---

[5]     The issue is currently before the California Supreme Court.  (*People v. Mosley* (2010) 188 Cal.App.4th 1090 (S187965, review granted Jan. 26, 2011 [residency restrictions are punishment, and therefore jury trial required on facts exposing defendant to registration requirement].)

victim off guard, orally copulating her, and then had intercourse with her.  Defendant continued having sex with the victim at his house three to four times per week.

This evidence is overwhelming proof that defendant's crimes were committed for the purposes of sexual gratification and out of sexual compulsion, and we are convinced beyond a reasonable doubt that a jury would so find.  Accordingly, even assuming it was error that a jury did not make these factual findings required by section 290.006, that error was harmless beyond a reasonable doubt.

DISPOSITION

The judgment is affirmed.



                                                        ROBIE            , Acting P. J.



We concur:



        MAURO          , J.



        HOCH           , J.