Filed 1/27/15  P. v. Arrendondo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060232 |
| v. | (Super.Ct.No. RIF112896) |
| JOSEPH MARIO ARREDONDO, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

## FACTUAL AND PROCEDURAL HISTORY

A.      THE UNDERLYING CASE[1]

"Defendant, who was married to Christi[]na, was the youth pastor at the New Beginnings Church in Corona.  The youth group met on Sunday mornings and Tuesday nights.  The victims, Andrea Y. and Jessica R., were members of the youth group.

"Jessica first met defendant when she was 14 years old, during the summer before her sophomore year of high school.  Defendant counseled her while her parents were going through a divorce.  Jessica's mother also wanted her to receive counseling because of her sexual activity.

"During a retreat the following summer in 2002, Jessica and defendant spent a significant amount of time together and began developing a mutual attraction for each other.  After the retreat, they continued to spend time with each other outside of church functions.

"On September 11, 2002, defendant called Jessica and invited her over to his house.  After she arrived, they went into defendant's bedroom, where they engaged in vaginal intercourse.  They again had sex at defendant's house about two weeks later.  After the second time, they met together for sex almost once a week.  They sometimes met at a motel to be alone because defendant and his wife shared their home with other roommates.  During one occasion on June 11, 2002, defendant rented a room at the Motel 6 in Corona, where the two engaged in various sex acts, including anal and vaginal

[1] The facts are taken from our opinion in case No. E039190.  (*People v. Arredondo* (Aug. 21, 2006, E039190) [nonpub. opn.].)

2

intercourse.  During another occasion on February 12, 2003, at the same Motel 6, defendant and Jessica had oral sex and vaginal intercourse.

"Defendant also began counseling Andrea early in her high school years concerning her relationship with her mother and premarital sex.  Their conversations over the phone and in person became more frequent.  Defendant regularly met with Andrea and Jessica after services on Tuesday nights.  Although defendant taught the students to abstain from premarital sex, he privately told the girls that if he were not married, they could come to him for sex.

"On April 26, 2003, a couple of days before defendant's birthday, Andrea and Jessica invited defendant over to Andrea's house to give him a birthday gift.  The gift included a pair of handcuffs engraved with their initials "JAJ."  As the three played a game of truth or dare, they took off some of their clothing and defendant, who used to be a stripper, demonstrated one of his stripper routines.  At one point, Andrea dared defendant to rent a hotel room for the three of them.  Defendant rented a room at the Econo Lodge in Riverside.  After Andrea and Jessica met defendant at the motel, they took turns performing various sex acts with each other, including oral sex, digital penetration, and vaginal intercourse.  Defendant also instructed the girls to touch each other's vagina while having sex with him.

"On the following day at church, defendant told the girls that they should continue having sex with him. Defendant met Andrea later that day and had vaginal intercourse with her in the back seat of her car.

3

"On April 28, 2003, Andrea met with defendant at his house. Inside defendant's bedroom, he orally copulated Andrea and then engaged in digital penetration and vaginal intercourse. During another incident at defendant's house in May, defendant penetrated Andrea's vagina with his finger and then had vaginal intercourse with her on the floor. Also in May, Andrea drove the three of them down an alley, where defendant had vaginal intercourse with Jessica in the backseat of Andrea's car.

"At a graduation party in June of 2003, Andrea told Casandra McCoy, who used to attend the New Beginnings youth group, about her sexual relationship with defendant. Cassandra also was good friends with Christina, defendant's wife. Andrea provided specific details concerning the sexual encounters, including the occasion at the motel with Jessica. After learning about the relationship, Cassandra told her sister and other members of her family and the church. She also told defendant's wife.

"Once confronted, Andrea denied the relationship to her father and to the pastoral staff at New Beginnings. Andrea, however, later admitted the relationship to her stepmother, who then took her to the Corona Police Department. During the police interview, Andrea initially mentioned only the April 26, 2003, incident.

"Jessica's last sexual encounter with defendant was on June 17, 2003. On the following day, during a meeting with the senior pastor at New Beginnings, Jessica denied having a sexual relationship with defendant. Despite Jessica's denials, Jessica's mother took her to the police station. Jessica eventually disclosed to the police the details of the sexual encounters.

4

"Detective Randy Ryder confirmed that defendant had rented a room at the Econo Lodge on April 26, 2003. He also confirmed that defendant had reserved a room at the Motel 6 in Corona on eight separate occasions, including the two specific dates provided by Jessica.

"Defendant denied having sex with the two girls. Defendant explained that he rented the rooms at the Motel 6 either to have sex with his wife or for the homeless. Defendant's wife, Christina, corroborated defendant's story and said that she and defendant often rented motel rooms for privacy because they shared their house with other roommates, including her father. As to the room at the Econo Lodge, defendant admitted that he was with Andrea and Jessica and that he rented the room as a joke during a truth-or-dare game. According to defendant, they never used the room." (Opn. at pp. 3-6.)

B.     PROCEDURAL HISTORY

On March 29, 2005, a jury convicted defendant and appellant Joseph Mario Arredondo, Jr., of eight counts of unlawful sexual intercourse with a minor more than three years younger than defendant under Penal Code section 261.5, subdivision (c);[2] three counts of unlawful oral copulation with a minor under section 288a, subdivision (b)(1); three counts of unlawful penetration of a minor with a foreign object under section 289, subdivision (h); and one count of unlawful sexual intercourse with a minor under 16 years of age by a person over 21 years of age under section 261.5, subdivision (d).

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

Thereafter, the trial court granted defendant's motion for a new trial. The prosecutor appealed. On August 21, 2006, in case No. E039190, we reversed the trial court's grant of a new trial.

On January 19, 2007, the trial court sentenced defendant to 13 years, 4 months in prison, and ordered that he register as a sex offender under section 290. Defendant appealed his conviction and we affirmed the judgment on June 20, 2008, in case No. E042647.

On December 7, 2012, defendant filed a petition for writ of habeas corpus in Riverside County Superior Court challenging the mandatory sex offender registration requirement under section 290. The trial court elected to treat defendant's writ of habeas corpus as a writ of mandamus. On December 12, 2012, the court invited the prosecutor to submit an informal response to the petition. In the informal response, the prosecutor agreed that an Order to Show Cause should issue, but requested permission to file a formal response. Defendant filed a reply on February 28, 2013. The trial court determined that defendant had stated a prima facie basis for relief, issued an Order to Show Cause, and appointed counsel for defendant.

On July 15, 2013, the trial court found that the mandatory registration requirement of section 290 was unconstitutional as applied to defendant under *People v. Hofsheier* (2006) 37 Cal.4th 1185; concluded that section 290.006's discretional registration requirement was constitutional; and ordered an evidentiary hearing to determine whether defendant should be required to register as a sex offender under section 290.006.

On October 17, 2013, the trial court held an evidentiary hearing and ordered defendant to register as a sex offender under section 290.006.

On December 16, 2013, defendant filed a notice of appeal. On appeal, defendant contends the trial court abused its discretion in imposing the discretionary lifetime sex offender registration under section 290.006 because the court: (1) failed to make any finding with respect to the likelihood he would reoffend; (2) failed to provide any statement of reasons as to why defendant's offenses made it likely he would reoffend; and (3) failed to consider defendant's behavior since his original sentencing in determining whether he would likely reoffend. For the reasons set forth below, we affirm.

## DISCUSSION

A. <u>THE TRIAL COURT PROPERLY IMPOSED LIFETIME REGISTRATION UNDER THE DISCRETIONARY PROVISIONS OF SECTION 290.006</u>

Defendant contends that the trial court abused its discretion in imposing discretionary lifetime sex offender registration under section 290.006 because the court failed to: (1) make any finding with respect to the likelihood he would reoffend; (2) provide any statement of reasons as to why defendant's offenses made it likely he would reoffend; and (3) consider defendant's behavior since the time of his original sentencing in determining whether he would likely reoffend.

7

1. *RELEVANT PROCEEDINGS*

In the People's "Hearing Brief Regarding Discretionary Sex-Offender Registration," the prosecutor argued in favor of lifetime registration based upon the likelihood that defendant would reoffend. In support, the prosecutor pointed to the nature of the crimes for which defendant was convicted, and his subsequent conduct involving his second wife and their child custody dispute.

In defendant's brief, he urged the court not to impose lifetime registration. He argued that there was no evidence he was likely to reoffend in the future. In support, defendant pointed to the fact that there had been no allegations of sexual misconduct against him in the 10 years between his last known offense and resentencing, and there was no evidence of any disciplinary actions taken against him during his incarceration.

At the evidentiary hearing on October 17, 2013, defense counsel argued that the court was required to consider all of defendant's conduct up to the time of sentencing, which included "anything in the intervening time from the incident until now" under *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70 (*Lewis*), and *People v. Garcia* (2008) 161 Cal.App.4th 475 (*Garcia*), disapproved on other grounds by *People v. Picklesimer* (2010) 48 Cal.4th 330, 338-339, fn. 4. Counsel noted that the last count for which defendant was convicted occurred on June 17, 2003, he was out of custody until September 2006, and then served six years in prison. Defense counsel argued that "if this court looks at that time from June of 2003 until now, there are no allegations of misconduct, there are no allegations of even [defendant] putting himself in a situation where there could be misconduct."

The prosecutor acknowledged that there had been no known allegations of sexual misconduct against defendant since 2003. The prosecutor, however, explained that from 2003 to 2006, defendant "was facing felony criminal charges here in Riverside County or he was out on bail pending the People's appeal from the first trial." Defendant then served six years in prison. Although defendant had been released from prison in March 2013, he was not set free. Instead, he was transferred to jail in Yavapai County, Arizona, where there were pending charges against him involving harassment of his second wife. Accordingly, defendant only had really been out of custody for two of the eight years between the conviction for his last offense and his resentencing.

Moreover, the prosecutor argued that defendant's prior offenses, which occurred while he was a youth pastor at a church, were extremely serious. "He was actually tasked with counseling young women on abstinence. And instead of doing that, he was actually having—engaging in various sexual acts with a 15- and 17-year-old girl. At times together, all three of them."

The prosecutor went on to note that defendant had not taken responsibility for his actions, as evidenced by the fact that defendant had filed various habeas petitions over a period of six to eight years wherein he denied "any culpability, saying the girls are lying, everybody was against him."

The court asked the parties whether it could consider all of defendant's conduct up to the time of resentencing in deciding whether to impose lifetime registration under section 290.006. Both parties agreed it could.

9

The court then explained that it was not going to consider defendant's postsentencing proceedings involving his former wife because "sometimes people can get a little heated in their divorce proceedings." Instead, the court stated it was going to focus "most on the conduct before sentencing as opposing to focusing on the conduct after sentencing because . . . this is, in a sense, a resentencing." The court then stated, "So, I'm focusing just on the things that happened before sentencing, the things that he was convicted of, and the circumstances surrounding the acts which caused him to be convicted of the crimes."

The court explained that it was imposing the lifetime registration requirement because defendant is a "sexual predator," and a "danger to society," who would not have stopped his behavior "but for the fact that one of the girls told the wrong person what was going on."

## 2.    *STANDARD OF REVIEW*

The standard of review for reviewing a trial court's decision to require registration under section 290.006 is abuse of discretion. In applying this standard, "[b]road deference must be shown to the trial judge. The reviewing court should interfere only "'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." [Citations.]' [Citation.]" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

10

### 3. *RELEVANT LAW*

For certain sexual offenses that do not require mandatory lifetime registration under section 290, the trial court still has the discretion to impose a registration requirement under section 290.006, where it (1) finds the defendant committed the offense due to "sexual compulsion" or "for purposes of sexual gratification" and states the reasons for its findings; and (2) states its reasons for requiring lifetime registration. (§ 290.006; *People v. Hofsheier*, *supra*, 37 Cal.4th at p. 1197.)

"Where registration is discretionary . . . one consideration before the court must be the likelihood that the defendant will reoffend." (*Garcia*, *supra*, 161 Cal.App.4th at pp. 483-485; see also *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431.) In making that determination, at a *Hofsheier* hearing, the court may consider not only defendant's prior offenses, but also his behavior since the time of his original sentencing. (*Garcia*, at p. 485.)

### 4. *THE TRIAL COURT DID NOT ABUSE ITS DISCRETION*

In this case, the record shows that the trial court went through a thoughtful and thorough analysis when exercising its discretion to impose lifetime registration for defendant. The court, after hearing both sides, stated:

"I see sophistication. This is a youth pastor tasked with helping out some young girls. And as opposed to helping them, he seduced them. . . . He often planned meetings at motels, how to get around his wife at the time or make sure that she was not knowing about what he was doing and fooling other adults, including his fellow pastors and the lead pastor at his church. And he took—not only did he not inform them, but he took the

11

steps to make sure that they didn't find out what he was doing. It looked like a very sophisticated and ongoing enterprise by the gentleman until one of the girls told another person who told his wife who then blew the whistle. So there's no indication to me that it would have stopped but for the fact that one of the girls told the wrong person what was going on.

"So to me, he's a sexual predator. Not of strangers—I don't believe he's going to go off and snatch somebody off the street—but of people that he knows, people that come within his purview as a church pastor or whatever. You know, people that he can meet. I think he is actually a danger to society. And if I had heard the trial and all the facts that I have in front of me, which is pretty voluminous, I would exercise my discretion then and now to require a lifetime registration."

Based on the above statement by the court, we find the record shows that the trial court made an implicit finding that defendant was likely to reoffend. The court made it clear defendant *is* a sexual predator, and *is* a danger to society. The court believed defendant would target people he knows. Moreover, the court made it clear that defendant only stopped molesting his two victims after he was caught, not by his own volition. Based on the evidence and statement by the court, we discern no abuse of discretion. In fact, based on the facts, we may have found it to be an abuse of discretion had the trial court decided defendant did *not* need lifetime registration as a sex offender.

12

The record additionally shows the court knew that, in determining whether defendant was likely to reoffend, it could consider his behavior from the time of his last known offense in 2003 until the time of his *Hofsheier* hearing. As provided above, the court specifically asked the parties if it could consider all of defendant's conduct up to the time of resentencing in deciding whether to impose lifetime registration under section 290.006. Both parties agreed the court could. The court then explained it was not going to consider defendant's postsentencing proceedings involving his former wife because "sometimes people can get a little heated in their divorce proceedings." Instead, the court stated it was going to focus on defendant's prior convictions and the circumstances surrounding those acts. However, as explained above, because defendant was either out on bail or in custody for a majority of the time between his offenses and the hearing, there was very little else for the court to consider.

In his hearing brief, defense counsel made it clear that there had been no allegations of sexual misconduct against defendant in the past 10 years between his last known offense and resentencing, and there was no evidence of any disciplinary actions taken against him during his incarceration. Defense counsel reiterated this argument at the hearing on the motion. Counsel also reminded the court that case law required the trial court to consider all of defendant's conduct up to the time of resentencing. The court, therefore, was obviously aware of this evidence, but ultimately determined that the gravity of defendant's actions and the danger he posed to society outweighed his postsentencing behavior.

13

Defendant's reliance on *Garcia*, *supra*, 161 Cal.App.4th 475, in his reply brief, is misplaced. In that case, the appellate court reversed the trial court's order requiring lifetime registration because the trial court failed to consider information about the defendant's behavior subsequent to committing his offense "in exercising its discretion to require defendant to register as a sex offender." (*Id.* at p. 485.) The appellate court ordered the trial court, at the new hearing, to "consider the evidence defendant presented as to his good behavior and rehabilitation." (*Ibid.*) The facts in this case are different. Here, there is ample evidence showing that the trial court considered defendant's postoffense actions. In fact, the court was generous in that it declined to consider defendant's postsentencing proceedings involving his former wife.

Moreover, defendant's reliance on *Lewis*, *supra*, 169 Cal.App.4th 70, is also misplaced. In that case, the 22-year-old defendant was convicted of two counts of oral copulation with a 17-year-old minor. Twenty years later, the defendant filed a motion in the superior court asking it to lift the lifetime registration requirement under section 290. He also argued that discretionary registration under section 290.006 was not warranted because the defendant had not committed a registerable offense in the previous 20 years. (*Lewis*, at p. 73.) The trial court ordered the defendant to register under section 290.066. (*Lewis*, at p. 75.)

The court of appeal reversed and directed the trial court to strike the registration order. (*Lewis*, *supra*, 169 Cal.App.4th at pp. 77-78, 80.) It explained that the record from the 1987 conviction was "incomplete and inaccurate." (*Id.* at p. 79.) Moreover the facts the court had before it did not suggest that the defendant was likely to prey upon

14

young girls or to commit registerable sex offenses. While the victim was a minor, she was 17 years old and the defendant was only 22 years old. Moreover, there was no substantial evidence that the offenses were committed by means of force, violence or duress. Additionally, in the 20 years since his conviction, the defendant had not committed any offenses requiring him to register as a sex offender or offenses similar to those requiring registration. Thus, nothing in the record showed that the defendant was likely to reoffend. (*Id.* at pp. 78-79.)

This case is different. Here, defendant had only been out of custody for approximately two of the eight years from the time of his conviction to his resentencing. Thus, he had not gone 20 years without reoffending like the defendant in *Lewis*. Moreover, the victims in this case were much more vulnerable than the victim in *Lewis*. Here, both victims were members of the church where defendant, who was 28 years old, worked as the youth pastor—in a position of authority. He had been specifically entrusted to counsel the girls, one of whom was only 15 years old, about abstinence. Instead of counseling the girls, he engaged in nine months of continued and habitual unlawful sexual behavior with the victims. Therefore, in this case, we cannot say that the trial court's finding that defendant is a "sexual predator" and a "danger to society" who needs the supervision that registration provides constituted an abuse of discretion. Indeed, these findings are more than amply supported by substantial evidence.

In sum we find that the trial court did not abuse its discretion in imposing lifetime registration under section 290.006.

15

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                J.

We concur:

RAMIREZ _____
                    P. J.

McKINSTER _____
                    J.