Filed 7/19/24  P. v. Tobin CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>KEMONI ELIJAH TOBIN,<br><br>        Defendant and Appellant. | C099380<br><br>(Super. Ct. No. 22FE012107) |

A jury found defendant Kemoni Elijah Tobin guilty of pimping and pandering but not guilty of human trafficking.  The trial court sentenced defendant to four years in prison and required him to register as a sex offender.  On appeal, defendant argues, and the People properly concede, that the trial court failed to make the requisite findings to support its order requiring defendant to register as a sex offender.  We will remand to allow the trial court to make the requisite findings on the record or to eliminate the registration requirement.

1

BACKGROUND

The amended information charged defendant with human trafficking, pimping, and pandering. (Pen. Code, §§ 236.1, subd. (b), 266h, subd. (a), 266i, subd. (a)(2).)[1] It also alleged a host of circumstances in aggravation which are not relevant to the disposition of this appeal.

The victim testified that she met defendant through a social media platform. She was 25 years old at the time.

Defendant operated under the moniker "Mo Money." The victim was in dire financial straits and defendant told her that he could help her out financially. When the victim met defendant in person, she knew the proposal might involve prostitution. When they met, defendant told her she could "bust dates" (have sex for money) and he would protect her. This was not a new idea for her as the victim had engaged in prostitution when she was 19 years old. In exchange for his protection, defendant would take 50 percent of the money she made. The victim agreed.

A couple of hours after their first meeting, the two went back to her home and defendant put the victim's clothes and makeup together and took her to a place called "the blade" where prostitutes "walk around on the sidewalk and ask people that are driving in their cars if they want to partake" in prostitution. Defendant told the victim to keep her head down and only to talk to customers in passing cars. The victim reported that one time while she was walking on the street a man pulled a knife on her and threatened to stab her.

The victim worked her first night on the street until approximately 5:00 a.m. She slept about two hours before reporting for an eight-hour shift at her regular job. After work at her regular job, she returned to the streets. She testified she worked the streets

---

[1]     Further undesignated section references are to the Penal Code.

2

three times over a two-week period. Cell phone records indicated her association with defendant lasted between June 27, 2022, and July 2, 2022.

Defendant took photos and videos of the victim and used them to advertise her services. Defendant took a video of the two having sex to post on the internet. The victim called this an "act of violence" because defendant wanted to continue, but the victim did not, and she told him so.

Despite their agreement to split the proceeds 50/50, the victim spent her money on hotel rooms and food for both of them and had nothing to take home. After about five or six days, the victim felt she was no longer free to leave defendant. When she told defendant she wanted out, he told her she was not thinking right and was irritated and upset. Defendant threatened the victim by insinuating he would come to her house and drag her out. The victim testified that defendant got angry with her and twice grabbed her by the throat.

Defendant also engaged in sleep deprivation tactics by waking the victim up every 15 or 30 minutes. A few times he woke her up to talk to a customer. The victim felt like she "didn't have that part of my brain, like my brain wasn't functioning right, like it felt like there were pieces of my brain missing. I felt like I couldn't think right to save my life honestly."

The victim also testified about a situation in which she and defendant were present when defendant's friend extinguished a cigarette on the chest of another woman's body. Defendant appeared okay with this.

One day the victim decided to leave. The victim called the police after she asked defendant if she could leave, and he said that was not an option.

Officers set up a pretext call with defendant. During the pretext call, defendant asserted the victim still owed him money and that if she paid him off, he would no longer bother her. When she told defendant she was no longer interested in turning "tricks" to

3

get the money, defendant asserted she could make that money in less than three nights of prostitution.

The jury found defendant guilty of pimping and pandering but not guilty of human trafficking. (§§ 236.1, subd. (b), 266h, subd. (a), 266i, subd. (a)(2).) It also found not true all the special allegations submitted to it.

The trial court sentenced defendant to the middle term of four years in prison on each count but stayed the sentence on the pandering conviction pursuant to section 654.

Defendant objected to the probation department's recommendation that defendant register as a sex offender. On this point, the trial court judge said, "I remember [this trial] very well. . . .This one, there was just a lot more detail about the circumstances surrounding the pimping and pandering, and kind of almost it's like a different world out there when it comes to the kind of exploitation and what occurred here with this, I would say, streetwise but vulnerable victim. [¶] I do think that the jury obviously did not buy the human trafficking. I think there was evidence of that, but it wasn't enough for proof beyond a reasonable doubt. But, . . . there is a saying that when you download an app on your phone, it's free, you are the commodity. And unfortunately in our society, human beings tend to be commodities in a variety of different ways. [¶] But here what you did is you made this young woman a commodity so she could be exploited sexually in an extremely dangerous situation. She had a knife pulled on her at one point. There were other circumstances that were just really horrendous in terms of the situation she found herself in, and you recruited her. I think to a certain extent she may have recruited you. But that doesn't absolve you based on what the jury found and proof beyond a reasonable doubt. . . . [¶] [¶] [T]he sexual nature of these crimes as well as the situation, I know your attorney said it was consensual, . . . but as he knows, I'm sure, that occurred in the context of advertising this young woman for her sexual trade that you were exploiting her for. So I do think that's part and parcel with why you should be registered as a sex

4

offender pursuant to Penal Code Section 290.006 [, subdivision] (a) for a period of 10 years."

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant argues the trial court abused its discretion in requiring him to register as a sex offender because the court failed to make the requisite finding that the offense was committed as a result of sexual compulsion or for the purpose of defendant's sexual gratification. The People concede this point, and we agree.

Section 290.006, subdivision (a) provides, in pertinent part, "Any person ordered by any court to register pursuant to the act, who is not required to register pursuant to Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration."

Section 290.006 thus requires the court to undertake a two-step process: "(1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender. By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197-1198 overruled on other grounds by *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 875.)

Here, while the trial court stated its reasons for imposing the registration requirement, those reasons focused on the fact that defendant commoditized the victim for his own financial gain. The trial court made no findings on the first prong of the

5

analysis, i.e., whether or how this offense was committed as a result of defendant's sexual compulsion or for purposes of his sexual gratification.  Similarly, the probation report is devoid of facts that might support findings on this point as it merely recommended the court consider requiring defendant to register as a sex offender without any discussion of the facts on the relevant statutory points.  As a result, we must remand for the trial court to make the required findings in the first instance or to remove the requirement defendant to register as a sex offender.

DISPOSITION

The trial court's sex offender registration order is vacated, and the matter is remanded for a new sex offender registration hearing.  In all other respects, the judgment is affirmed.


_____\s\_____,
Krause, J.


We concur:


_____\s\_____,
Renner, Acting P. J.


_____\s\_____,
Mesiwala, J.